FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

OCT 21 2009

MATTHEW J. DYKMAN
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | CRIMINAL NO. 09cr 3065 |
| vs. | ) ) ) | Counts 1 - 14: 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 2: Aiding and Abetting. |
| KEVIN POWERS, | ) ) | |
| Defendant. | ) | |

## INDICTMENT

The Grand Jury charges:

### Introduction

At all times relevant to this Indictment:

1.      The Defendant, **KEVIN POWERS**, was a real estate agent and a mortgage broker in Albuquerque, New Mexico, involved in purchasing and selling residential real estate properties, as well as obtaining financing for the purchasers of residential properties.

2.      The documents used to apply for a residential mortgage loan are collected at a mortgage broker's office, who then transmits the documents to the lender for review.  These documents often include the Uniform Residential Loan Application, also known as a Form 1003, which the lender uses to record relevant financial information about an applicant who applies for a mortgage.

3.      Once a loan is approved by a lender, a closing on the property takes place through a title company acting on behalf of the lender.  The title company's officers are required to prepare a United States Department of Housing and Urban Development

Settlement Statement (hereinafter, "HUD-1) showing the funds paid by the borrower and due to the seller. The HUD-1 shows the closing costs, prorations, escrow deposits, mortgage amounts and obligations to be satisfied. The title companies' officers collect funds from the borrowers. Funds may be wire transferred by the lenders or on their behalf to the title companies' escrow accounts. When authorized by the parties to the transactions and the lenders, the title companies disburse the funds from their escrow accounts to various individuals and entities as detailed on the HUD-1.

4.  In a "cash back" scheme, the buyer offers to purchase a property for more than the asking price, and submits to the seller a contract for the inflated price. The seller agrees to the sale because he receives his full asking price. At closing, the amount over the actual asking price is paid to the buyer without the knowledge of the lender. The "cash back" scheme puts the lender at greater risk because the loan originates with negative equity in the property. For this reason, lenders do not allow buyers to receive undisclosed cash at closings of the origination of a loan.

5.  Purchasers involved in "cash back" schemes often are recruited as investors, and are helped to obtain mortgages and to purchase houses as primary residences although they do not plan to live in the houses, and intend to use the cash back funds to make mortgage payments until the houses can be re-sold at a profit. The persons facilitating the "cash back" schemes often help prepare the Uniform Residential Loan Applications, falsely representing the buyers' assets and income, concealing mortgages and other debts, misrepresenting sources of down-payments, and the buyers' intent to occupy the properties as primary residences. The fact that the buyers will be receiving cash back at the closings also is concealed from the lenders. These

misrepresentations and omissions are made to the lenders in order to qualify the buyers for mortgages.

6.  The following title companies, all with offices in Albuquerque, New Mexico, acted on behalf of lenders in transactions described below: First American Title Company; Fidelity Title Company; and U.S. Title Company.

7.  The following entities were engaged in the business of mortgage lending, and were the lenders in transactions described below: Suntrust Mortgage, Inc.; Cameron Financial Group, dba 1st Mortgage Choice; National City Mortgage; Accredited Home Lenders, LLC.

## Counts 1 - 14

8.  Paragraphs 1 through 7 are re-alleged and reincorporated as if fully set forth herein.

9.  Beginning in or before March, 2006, and continuing through at least April 30, 2007, in Bernalillo County, in the District of New Mexico, and elsewhere, the defendant, **KEVIN POWERS,** with intent to defraud, knowingly and unlawfully devised and intended to devise a scheme and artifice to defraud lenders, as identified below, and to obtain money, funds and other property from lenders by means of materially false and fraudulent pretenses, representations and promises, and by intentional concealment and omission of material facts.

## The Scheme and Artifice

10.  It was part of the scheme and artifice that the defendant, **KEVIN POWERS**, devised a "cash back" scheme in which he acted as the real estate agent and mortgage broker for buyers whom he enlisted as real estate investors.

11.    In furtherance of the scheme and artifice, the defendant, **KEVIN POWERS**, did the following:

    a.    As the buyers' real estate agent, the defendant often would tell the buyers that they would look for homes which could appraise for more than the selling prices. They would then tell the seller's real estate agents that the buyers would purchase the homes for the asking prices so long as the sellers and their agents would agree to raise the prices of the homes by specific amounts of money. The defendant would present contracts to the sellers' real estate agents in which the buyers agreed to purchase homes at prices above the original Multiple Listing System ("MLS") list prices. The sellers' agents would present the purchase contracts for the inflated prices to their clients and obtain agreements from the sellers to pay for purported remodeling and repair costs from the inflated sales proceeds, in order to facilitate the sales of their homes.

    b.    Once the terms of the purchases had been approved by both the buyers and sellers, often the sellers' agents would increase the MLS list prices for the properties to an amount equal to or above the agreed inflated purchase prices in order to avoid detection by the lenders and others.

    c.    The defendant, and others at his direction, helped the buyers he enlisted as investors to prepare Uniform Residential Loan Applications, also known as Forms 1003, falsely representing the buyers' assets and incomes, concealing mortgages and other debts, misrepresenting the sources of intended down-payments and intents to occupy the properties as primary residences. These misrepresentations were made to qualify the buyers for mortgages, who otherwise could not have

financially qualified. Moreover, the defendant concealed from the lending institutions that at the close of each sale a portion of the loan was paid to K&E Construction, a purported construction company which allegedly was going to remodel and repair the homes being purchased. In fact, K&E Construction was a shell company owned by the defendant, and was used as the vehicle to funnel money back to the buyers, which they then used primarily to make mortgage payments, and not for remodeling or repairs.

    d. Mortgages were approved by lenders based on these false and fraudulent loan applications. Prior to the closing of each property, loan proceeds were wire-transferred from lenders on behalf of the buyers to the bank accounts of the title companies in New Mexico. The defendant would submit false and fraudulent invoices at the closings to substantiate the amounts to be paid to K&E Construction. At closing, the title companies were directed by the defendant and the sellers' agents to issue checks from the sales proceeds to K&E Construction. The defendant never disclosed that he owned K&E Construction, or that funds paid to K&E Construction at closings, allegedly for the purposes of remodeling and repairing the properties, in fact were intended to be used, and were used by the buyers to make mortgage payments. The defendant also received payments from the title companies for various fees associated with his roles as the buyers' agent and mortgage broker.

    e. Following the closings, the defendant would issue cashier's checks or otherwise convey funds issued to K&E Construction at closing to the buyers. K&E Construction did no repairs or renovation work for the buyers or sellers, and functioned only as an instrumentality to funnel cash to the buyers.

    f. As an inducement for the buyers to purchase the homes, the

defendant told them that they would not have to make mortgage payments with their own funds, and that before the cash obtained through the fraudulently obtained loans was exhausted, the houses would be re-sold at a profit.

  g. In some cases, the defendant, or others at the request of the defendant, would provide temporary loans to buyers represented by the defendant for the purpose of making down payments, with the understanding that he or the other lenders would be reimbursed at closing from the purported remodeling and repair costs. In such cases, the defendant and the buyers would not disclose these down payments to the lenders, but would instead falsely represent the sources of the down payments.

  h. On or about March 20, 2006, the defendant and his employees helped buyer J.P. complete a URLA for the property located at 6600 Glenturret Way, NE, Albuquerque, New Mexico, which listed the purchase price of the property as $490,000.00. The URLA contained the following false information: the buyer's intent to occupy the property as a primary residence, and overstated the buyer's gross monthly income. The defendant caused the URLA to be submitted to Suntrust Mortgage, Inc., which agreed to underwrite the loan. At the closing, the HUD-1 listed an amount of $85,000.00 which purportedly was to be paid by the seller to K&E Construction for renovations and repairs to the property. At the closing, based on an invoice presented by the defendant, a check was issued to K&E Construction for $85,000.00. Thereafter, the defendant gave the buyer, J.P., a check in the amount of $85,000.00, which J.P. used to make mortgage payments.

  i. On or about March 23, 2006, the defendant and his employees helped buyer J.P. complete a Uniform Residential Loan Application for the property

located at 6805 Glenturret Way, NE, Albuquerque, New Mexico, which listed the purchase price of the property as $490,000.00. The URLA contained the following false information: the buyer's intent to occupy the property as a primary residence, and overstated the buyer's gross monthly income. The defendant caused the URLA to be submitted to Accredited Home Lenders, Inc., which agreed to underwrite the loan. At the closing, the HUD-1 listed an amount of $75,000.00 which purportedly was to be paid by the seller to K&E Construction for renovations and repairs to the property. At the closing, based on an invoice presented by the defendant, a check was issued to K&E Construction for $75,000.00. Thereafter, the defendant gave the buyer, J.P., a check in the amount of $75,000.00, which J.P. used to make mortgage payments.

   j. On or about March 27, 2006, the defendant and his employees helped buyer J.P. complete a URLA for the property located at 6701 Glenlochy Way, NE, Albuquerque, New Mexico, which listed the purchase price of the property as $490,000.00. The URLA contained the following false information: the buyer's intent to occupy the property as a primary residence, and overstated the buyer's gross monthly income. The defendant caused the URLA to be submitted to Cameron Financial Group, dba 1st Choice Mortgage, which agreed to underwrite the loan. At the closing, the HUD-1 listed an amount of $80,000.00 which purportedly was to be paid by the seller to K&E Construction for renovations and repairs to the property. At the closing, based on an invoice presented by the defendant, a check was issued to K&E Construction for $80,000.00, which the defendant took. Thereafter, the defendant gave the buyer, J.P., a cashier's check in the amount of $80,000.00, which J.P. used to make mortgage payments.

k.      On or about May 1, 2006, the defendant and his employees helped buyer S.R. complete a URLA for the property located at 6719 Glenturret Way, NE, Albuquerque, New Mexico, which listed the purchase price of the property as $490,000.00. The URLA contained the following false information: the buyer's intent to occupy the property as a primary residence. The defendant caused the URLA to be submitted to National City Mortgage, which agreed to underwrite the loan. At the closing, the HUD-1 listed an amount of $92,500.00 which purportedly was to be paid by the seller to K&E Construction for renovations and repairs to the property. At the closing, based on an invoice presented by the defendant, $92,500.00 was wire-transferred to the defendant's bank account. Thereafter, the defendant gave the buyer, S.R., a cashier's check in the amount of $92,500.00, which S.R. used to make mortgage payments.

l.      On or about May 9, 2006, the defendant and his employees helped buyer P.C.W. complete a URLA for the property located at 7909 Rio Grande, NW, Albuquerque, New Mexico, which listed the purchase price of the property as $885,000.00. The URLA contained the following false information: the buyer's intent to occupy the property as a primary residence, and overstated the buyer's gross monthly income. The defendant caused the URLA to be submitted to Cameron Financial Group, dba 1st Choice Mortgage, which agreed to underwrite the loan. At the closing, the HUD-1 listed an amount of $244,000.00 which purportedly was to be paid by the seller to K&E Construction for renovations and repairs to the property. At the closing, based on an invoice presented by the defendant, a check was issued to K&E Construction which the defendant deposited into his bank account. Thereafter, the defendant gave

the buyer, P.C. W., a cashier's check in the amount of $237,305.16, which P.C.W. used to make some renovations and the remainder for mortgage payments.

   m. On or about November 3, 2006, the defendant and his employees helped buyer C.S. complete a URLA for the property located at 12514 Holly, NE, Albuquerque, New Mexico, which listed the purchase price of the property as $1,300,000.00, although the sales price was $975,000.00. The URLA contained the following false information: overstated the buyer's gross monthly income. The defendant caused the URLA to be submitted to Suntrust Mortgage, which agreed to underwrite the loan. At the closing, the HUD-1 listed an amount of $350,000.00 which purportedly was to be paid by the seller to K&E Construction for renovations and repairs to the property. At the closing, based on an invoice presented by the defendant, a check was issued to K&E Construction for $350,000.00, which the defendant deposited into his bank account. Thereafter, the defendant gave the buyer, C.S., a cashier's check in the amount of $344,000.00, which C.S. used to make some renovations and also to make mortgage payments.

   n. On or about April 9, 2007, the defendant and his employees helped buyer D.T. complete a Uniform Residential Loan Application for the property located at 11801 Eagle Rock Ave., NE, Albuquerque, New Mexico, which listed the purchase price of the property as $760,000.00. The ULRA contained the following false information: the buyer's intent to occupy the property as a primary residence, and overstated the buyer's gross monthly income. The defendant caused the URLA to be submitted to Suntrust Mortgage, Inc., which agreed to underwrite the loan. At the closing, the HUD-1 listed an amount of $210,000.00 which purportedly was to be paid by the seller to K&E

Construction for renovations and repairs to the property. At the closing, based on an invoice presented by the defendant, a check was issued to K&E Construction for $210,000.00, which the defendant deposited into his bank account. Thereafter, the defendant gave the buyer, D.T., a cashier's check in the amount of $210,000.00, which D.T. used to make mortgage payments.

Execution of the Scheme

12. On or about the dates listed below, within the District of New Mexico and elsewhere, the defendant, **KEVIN POWERS**, for the purpose of executing the above-described scheme and artifice to defraud lenders, and to obtain money, funds and other property from lenders by means of materially false and fraudulent pretenses, representations, and promises, and by intentional concealment and omission of material facts, knowingly transmitted and caused to be transmitted by means of wire communications in interstate commerce signals and sounds, that is, banking wire transfers, from the identified financial accounts below, in the amounts listed below, to the recipients listed below in the District of New Mexico, the monies being mortgage financing funds for the real properties listed below:

| Count | Date | Wire Transmissions |
|---|---|---|
| 1 | 03/21/06 | $394,070.21 from Suntrust Mortgage in Richmond, VA, to U.S. Title bank account at Compass Bank (formerly Western Bank) in Albuquerque, NM, for financing purchase of 6600 Glenturret Way, Albuquerque, NM |
| Count | Date | Wire Transmissions |
| 2 | 03/21/06 | $97,885.76 from Suntrust Mortgage in Richmond, VA, to U.S. Title bank account at Compass Bank (formerly Western Bank) in Albuquerque, NM, for financing purchase of 6600 Glenturret Way, Albuquerque, NM |
| 3 | 03/23/06 | $370,252.06 from New York LTD Funds Control in New York, NY, to U.S. Title bank account at Compass Bank |

| Count | Date | Wire Transmissions |
|---|---|---|
| | | (formerly Western Bank) in Albuquerque, NM, for financing purchase of 6805 Glenturret Way, Albuquerque, NM |
| 4 | 03/23/06 | $120,823.08 from New York LTD Funds Control in New York, NY, to U.S. Title bank account at Compass Bank (formerly Western Bank) in Albuquerque, NM, for financing purchase of 6805 Glenturret Way, Albuquerque, NM |
| 5 | 03/27/06 | $394,546.86 from RFC Cameron Financial Group, Inc., in San Luis Obispo, CA, to U.S. Title bank account at Compass Bank (formerly Western Bank) in Albuquerque, NM, for financing purchase of 6701 Glenlochy, Albuquerque, NM |
| 6 | 03/27/06 | $97,489.95 from RFC Cameron Financial Group, Inc., in San Luis Obispo, CA, to U.S. Title bank account at Compass Bank (formerly Western Bank) in Albuquerque, NM, for financing purchase of 6701 Glenlochy, Albuquerque, NM |
| 7 | 05/04/06 | $390,546.86 from National City Bank of Indiana in Miamisburg, Ohio, to U.S. Title bank account at Compass Bank (formerly Western Bank) in Albuquerque, NM, for financing purchase of 6719 Glenturret, Albuquerque, NM |
| 8 | 05/04/06 | $96,845.05 from National City Bank of Indiana in Miamisburg, Ohio, to U.S. Title bank account at Compass Bank (formerly Western Bank) in Albuquerque, NM, for financing purchase of 6719 Glenturret, Albuquerque, NM |
| 9 | 05/09/06 | $649,424.91 from RFC Cameron Financial Group, Inc., in San Luis Obispo, CA, to bank account of Fidelity National Title Insurance Co., at Wells Fargo Bank, NA, in Albuquerque, NM, for financing purchase of 7909 Rio Grande, NW, Albuquerque, NM |
| Count | Date | Wire Transmissions |
| 10 | 05/09/06 | $232,571.89 from RFC Cameron Financial Group, Inc., in San Luis Obispo, CA, to bank account of Fidelity National Title Insurance Co., at Wells Fargo Bank, NA, in Albuquerque, NM, for financing purchase of 7909 Rio Grande, NW, Albuquerque, NM |
| 11 | 11/06/06 | $972,241.25 from Suntrust Mortgage in Richmond, VA, to bank account of First American Title Insurance Co. at Wells Fargo Bank, NA, in Albuquerque, NM, for financing |

|     |          | purchase of 12514 Holly, Albuquerque, NM |
| --- | -------- | --- |
| 12  | 11/06/06 | $326,175.00 from Suntrust Mortgage in Richmond, VA, to bank account of First American Title Insurance Co. at Wells Fargo Bank, NA, in Albuquerque, NM, for financing purchase of 12514 Holly, Albuquerque, NM |
| 13  | 04/09/07 | $609,369.50 from Suntrust Mortgage in Richmond, VA, to bank account of Fidelity National Title Insurance Co. at Wells Fargo Bank, NA, in Albuquerque, NM, for financing purchase of 11801 Eagle Rock, Albuquerque, NM |
| 14  | 04/09/07 | $151,446.12 from Suntrust Mortgage in Richmond, VA, to bank account of Fidelity National Title Insurance Co. at Wells Fargo Bank, NA, in Albuquerque, NM, for financing purchase of 11801 Eagle Rock, Albuquerque, NM |

In violation of 18 U.S.C. §§ 1343 and 2.

A TRUE BILL:

/s/
FOREPERSON OF THE GRAND JURY

_____
Assistant United States Attorney

_____ 10/20/09 1:39pm