IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

      Plaintiff,

  vs.                          No. CR 09-3065 MCA

**KEVIN POWERS,**

      Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the following pretrial motions:

Defendant's *Motion in Limine Regarding Contents of Recorded Telephone Calls and "Body Wire" Recordings* [Doc. 37]; *Defendant's Motion in Limine to Prohibit Use of Certain Terms by Lay and Expert Witnesses and Preclude Government from Offering Testimony that Certain Conduct is Fraud* [Doc. 93]; the Government's *Notice of Intention To Offer Evidence Pursuant To Federal Rules Of Evidence 401 And 404(b), And Memorandum Of Law In Support Thereof* [Doc 107]; Defendant's *Motion in Limine to Require Disclosure of Order of Witnesses Prior to Testifying* [Docs. 111, 113]; *Defendant's Motion in Limine to Exclude Evidence of Employment by the Vaughan Company and to Redact Documentary Evidence* [Doc. 112]; *Defendant's Motion in Limine to Preclude Testimony by Persons Granted Immunity but Not Disclosed* [Doc. 114]; Defendant's *Motion in Limine to Preclude Evidence Alleging Misrepresentations Concerning the Intent to Occupy Property as "Primary Residence"* [Doc. 115] and *Motion in Limine to Preclude Evidence Alleging Misrepresentations and/or Omissions*

*Concerning "Stated Income" on Loan Applications* [Doc. 116]; Defendant's *Motion in Limine to Preclude Introduction of Incomplete Loan File and Exclude Testimony Concerning Materiality of Alleged Misrepresentations and Omissions as Related to "Cameron" Counts (Counts 5, 6, 9 and 10)* [Doc. 118]; *Defendant's Motion in Limine to Prohibit Use of Mortgage Fraud and Other "Slang"* [Doc. 119]; *United States' Motion To Supplement Its Exhibit List (Doc. 108) With Requested Substitutions And Additions* [Doc 132]; *United States' Second Motion To Supplement Its Exhibit List (Doc 108) With Requested Additions* [Doc 156]; *United States' Third Motion To Supplement Its Exhibit List (Doc 108) With Requested Additions* [Doc 162]; and the Government's *Second Supplement to United States' Witness List (Doc 109)* [Doc 170].  The Court heard arguments and proffers from counsel at the Call of the Calendar on February 9, 2011. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court rules on the *Motions* as set forth in this *Memorandum Opinion And Order*.

## I.    BACKGROUND

On July 27, 2010, the grand jury returned a 17-count *Second Superseding Indictment* charging Defendant, Kevin Powers, a real estate agent and mortgage broker, with wire fraud, in violation of 18 U.S.C. § 1343.  The charges stem from Defendant's purported involvement in a "cash back" scheme, which, as alleged and recited in the indictment, is a scheme in which a buyer offers to purchase a property for more than the asking price.  The seller agrees to such a sale because he receives his full asking price,

and the difference is then returned to the buyer to pay the mortgage until he or she is able to resell the property at a profit. It is alleged that cash-back schemes are risky for the lender because the lender begins with negative equity in the property. Because of the risk involved, lenders do not allow buyers to receive undisclosed cash back at closings. [See Doc. 82 at 2].

According to the Government, loan applications used in connection with cash-back schemes contain numerous falsities, including that the buyer intends to use the property as his or her primary residence. Buyers in cash-back schemes also (1) misrepresent their assets and income; (2) conceal debts; and (3) provide untruths about the source of their down payment. If they did not make these misrepresentations, these buyers would not qualify for their loans.

As set forth in the Second Superseding Indictment, Defendant is charged with having created a system wherein, in his role as real estate agent and mortgage broker, he sought out buyers whom he then enlisted as "investors." Defendant would find properties that appraised for more than the asking price. He and his clients would agree to purchase those properties as long as the seller raised the asking price by a specific amount of money, which post-sale would be returned to the buyers. Once terms were agreed to, the sellers' agents would then increase the asking price to an amount over even the inflated price in order to avoid detection by lenders. Defendant then allegedly assisted his buyers in preparing the necessary paperwork, Uniform Residential Loan Applications ("URLAs") and Housing and Urban Development Settlement Statements ("HUD-1s")),

which contained the false statements and misrepresentations described above.  Defendant also hid from the lenders the fact that a portion of each loan was paid to K&E Construction Company, a company owned by him and purportedly enlisted to remodel and repair the purchased homes.  In fact, alleges the Government, K&E was nothing more than a shell corporation that was used as a vehicle to funnel money back to the buyers.  Once the lenders approved the falsity-based mortgages, they would wire transfer funds on behalf of the buyers to the bank accounts of New Mexico title companies.  [See generally Doc. 82].

Currently outstanding are 15 motions in limine and other pretrial motions.

## II.   ANALYSIS

Each *Motion* is addressed in turn.

### A.   Document 37—The January 17, 2008 Conversation

At the Call of the Calendar, Defendant acknowledged that his *Motion in Limine Regarding Contents of Recorded Telephone Calls and "Body Wire" Recordings* [Doc. 37] presents the same issues as *Defendant's Motion To Suppress Redacted Transcript Of January 17, 2008 Conversation Between Kevin Powers And Chris Sena* [Doc 90], filed August 18, 2010.  At the December 7, 2010 hearing on the subject, the Government agreed to redact a great deal of the conversation, and the Court otherwise denied Defendant's motion to suppress.  Considering the identical subject matter of the suppression motion and the motion in limine, together with the Court's ruling on the suppression motion, Defendant's *Motion in Limine Regarding Contents of Recorded*

*Telephone Calls and "Body Wire" Recordings* [Doc. 37] is denied as moot.

After the Call of the Calendar, however, the parties alerted the Court that the majority of the Government's proposed redactions were no longer acceptable to Defendant.  [See Doc 185, *United States' Notice Of Intent To Use Redacted Tape Recording And Transcript At Trial* and Doc 190, *Response to United States' Notice Of Intent To Use Redacted Tape Recording And Transcript At Trial*]  According to the Government's *Notice*, the parties continue to agree on the following redactions:

> Page 16, lines 17-25
> Page 17, lines 1-25
> Page 18, lines 1-14
> Page 27, lines 23-25
> Page 28, lines 1-25
> Page 29, lines 1-4
> Page 58, lines 2-23
> Page 59, lines 21-25
> Page 60, lines 1-6
> Page 73, lines 24-25
> Page 74, lines 1-5
> Page 75, lines 1-25
> Page 76, lines 1-25
> Page 77, lines 1-5

[Doc 185 at 2-5]  Accordingly, the Government shall redact these pages from the transcript and these portions of the conversation from the audio recording.

Citing Federal Rule of Evidence 106, Defendant now opposes the remaining proposed redactions because

> [a] fair elucidation of the true content, setting, flow and character of this conversation are important to the jurors' understanding of Mr. Powers' state of mind as he responded to Mr. Sena's questions, not only about [indicted properties], but about [those properties] in the context of the then current

economic issues and the state and federal political climate of the day.

[Doc 190 at 2]  Rule 106 states that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it."  In evaluating arguments under the "rule of completeness," this Court considers whether the disputed portion of a statement (1) explains admitted evidence, (2) places admitted evidence in context, (3) avoids misleading the jury, and (4) insures a fair and impartial understanding of the evidence. United States v. Lopez-Medina, 596 F.3d 716, 735 (10th Cir. 2010).  The purpose of the rule is to "prevent a party from misleading the jury by allowing into the record relevant portions of a writing or recorded statement which clarify or explain the part already received."  Id. (internal quotation marks and citation omitted).

For the most part, the Government maintains that the disputed portions of the recording are not relevant and do not serve the purposes outlined by our Circuit in Lopez-Medina.  Indeed, it is well established that the rule of completeness the admission of "only those portions which are relevant to an issue in the case and necessary to clarify or explain the portion already received[.]"  Id. (internal quotation marks and citation omitted).  Nevertheless, Defendant contends that the disputed selections establish a context for the entire conversation, are relevant to Defendant's state of mind, and provide insight into the Government's witness.  Having carefully reviewed the un-redacted

transcript in light of the parties' most recent submissions, the Court finds that including the disputed sections of the transcript will insure a fair and impartial understanding of the evidence and permit the jury to evaluate the conversation in its nearly full context, thereby avoiding the danger of misleading redactions.

Accordingly, the Government shall prepare the transcript and the recording to reflect only those agreed-upon redactions that are listed above and submit the redacted transcript and recording to Defendant and to the Court no later than noon on April 4, 2011.

**B.**     **Document 93—Fraudulent Conduct**

Turning to *Defendant's Motion in Limine to Prohibit Use of Certain Terms by Lay and Expert Witnesses and Preclude Government from Offering Testimony that Certain Conduct is Fraud* [Doc. 93], for the reasons stated on the record at the Call of the Calendar, the Court grants in part and denies in part the *Motion*.  The Government shall not elicit from witnesses conclusory opinions that Defendant's conduct amounted to fraud, but the Court will not order that no witness may use the words "fraud" and "fraudulent."

**C.**     **Documents 111 and 113—Order of Witnesses**

An identical motion was filed as Document 111 and Document 113.  For the reasons stated on the record at the Call of the Calendar, Defendant's *Motion in Limine to Require Disclosure of Order of Witnesses Prior to Testifying* [Docs. 111, 113] is denied.

**D.**     **Document 107—Rule 404(b) Evidence**

On September 17, 2009, the Government filed a *Notice of Intention To Offer Evidence Pursuant To Federal Rules Of Evidence 401 And 404(b), And Memorandum Of Law In Support Thereof* [Doc 107].  Defendant responded and filed *Defendant's Objections To United States' Notice Of Intention To Offer 404(b) Evidence (Doc. 107)* [Doc 124].  Under Fed. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Id.  Such evidence may be admitted, however, to establish motive, intent, knowledge, preparation, plan, identity, and absence of mistake or accident.  See id.; United States v. Zamora, 222 F.3d 756, 762 (10th Cir. 2000); United States v. Johnson, 42 F.3d 1312, 1315 (10th Cir. 1994).

To determine whether evidence is admissible for one of the purposes stated above, the Court applies the four-part test articulated by the Supreme Court in Huddleston v. United States, 485 U.S. 681, 691-92 (1988).  This test requires that:

> '(1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.'

Zamora, 222 F.3d at 762 (quoting United States v. Roberts, 185 F.3d 1125, 1141 (10th Cir.1999)).  In order to ensure that the evidence is offered for a proper purpose, our Circuit requires the Government to "articulate precisely the evidentiary hypothesis by

which a fact of consequence may be inferred from the evidence of other acts."  United States v. Porter, 881 F.2d 878, 884 (10th Cir. 1989) (internal quotation marks and citation omitted).  In turn, this Court "must specifically identify the purpose for which such evidence is offered and a broad statement merely invoking or restating Rule 404(b) will not suffice."  Id. (internal quotation marks and citation omitted).

As noted earlier, Defendant is charged with 17 counts of wire fraud.  In order to prove wire fraud, the Government must show:  "(1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) . . . use of interstate wire . . . communications to execute the scheme."  United States v. Baum, 555 F.3d 1129, 1131 (10th Cir. 2009) (alteration in original) (internal quotation marks and citation omitted).  The Government argues that its proposed testimony is intrinsic evidence that is relevant to demonstrate Defendant's intent to defraud the lenders, as well as knowledge, planning and absence of mistake.  The Government further maintains that the proposed evidence provides necessary context for charged crime.  Defendant responds that the evidence is not relevant to any element of the charged crimes, that even if the evidence is relevant, the government has not sufficiently identified a proper purpose, and that ultimately, the evidence is substantially more prejudicial than probative.  A brief review of the proposed testimony is in order, so as to place the arguments of the parties in the proper context.

**1.      Evidence Overview**

Prior to the charged transactions, Defendant represented five of the buyers in

previous transactions, and the Government proposes that these buyers will testify that they provided accurate income and employment information to Defendant for the purposes of the uncharged transactions.  The sixth buyer, Jodi Powers, Defendant's sister, was previously employed by him.  All of the buyers will testify (1) that the uncharged transactions were either refinances or purchases of inexpensive homes, (2) that the charged transactions involved substantially more expensive homes, and (3) that without the cash-back funds received at closing in the charged transactions, they could not have made the mortgage payments relating to the charged transactions "for very long."  The Government continues, in its *Notice*, to provide the details of the proffered evidence as to specific buyers, their employment, and the relevant properties.

Because relevancy is a threshold admissibility question and because relevancy is also a factor in admissibility under Rule 404(b), the Court first determines whether the proffered evidence is relevant to any material issue.

## 2.    Relevance

Federal Rule of Evidence 401 states that relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Generally, "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority."  Fed. R. Evid. 402.

Defendant contends that the proposed evidence is not relevant for several reasons.

First, Defendant argues that the employment and income information that was initially provided by the buyers for the uncharged transactions is not relevant to the present charges (1) because the initial information was provided earlier in time than the charged transactions and (2) because the initial information is "wholly dissimilar" from the information required for a "stated income purchase money loan."  [Doc 124 at 8]

Beginning with the second objection, Defendant states that the information required for a refinance or a loan to purchase rental property (the uncharged transactions) is completely different from the information that is required to obtain a stated income purchase money loan (charged transactions).  [Id.]  Defendant maintains that he only had the obligation to provide "the information the lender wanted from the borrower."  Thus, Defendant argues that because the lender requested employment or salary income information in the uncharged transactions and requested only stated income information in the charged transactions, it is unreasonable to infer that Defendant had knowledge of each buyer's true financial picture at the time that the charged loan applications were submitted.

There can be no dispute that the lenders required truthful information from buyers, and the Government's position is that Defendant encouraged his buyers to provide untruthful information for the charged loan applications.  The Government intends to elicit testimony that Defendant, based in part on earlier interactions with the same buyers, knew that the stated incomes reported on the loan applications were false.  Prior to submitting the charged loan applications, Defendant had general information about each

buyer's previous income and employment.  The stated income figures reported on the charged loan applications are allegedly significantly higher than the earlier figures would warrant.  Regardless of the type of loan product, the uncharged transaction information is relevant—if believed, the evidence tends to show that Defendant was aware that the stated income figures reported on the charged loan applications were inflated.  In addition, the Government intends to show that Defendant encouraged the buyers to inflate their stated incomes.  Defendant is free to cross-examine the buyers, in order to establish that additional income existed to explain the significantly higher stated income figure.

The analysis is somewhat different for Jodi Powers, because the Government does not intend to produce evidence that Jodi Powers and Defendant engaged in earlier business transactions that provided Defendant with relevant information about Jodi Powers's financial status.  Instead, the government seeks to introduce evidence that Defendant employed Jodi Powers for "some months prior to her buying the two homes described in Counts 11, 12, and 13."  [Doc 107 at 3]  Based on this, and his relationship with Jodi Powers as her brother, the government contends that Defendant had "direct knowledge of her true income and assets and lack of intent to occupy one of the homes." [Id.] Defendant responds that the familial relationship is irrelevant, and no inference can be drawn from that fact regarding Defendant's knowledge of Jodi Powers's finances. [Doc 124 at 15]  I agree.  It is not a reasonable inference that simply because Jodi Powers is Defendant's sister, he knew about her income status.  Nevertheless, the fact that Jodi Powers was previously employed by Defendant is relevant, because it is a reasonable

inference that an employer would have knowledge of an employee's salary—and any known source of income is relevant to determine whether Defendant knowingly facilitated lies regarding stated income on the charged loan applications.

The question of timing also does not render the evidence irrelevant.  The Government intends to prove an ongoing relationship between Defendant and his buyers. Although the uncharged transactions indisputably occurred prior to the indicted transactions, Defendant can explore on cross examination any notion that the figures and employment information that was revealed during the uncharged transactions was outdated by the time that the charged loan applications were submitted.

Defendant additionally contends that the proffered evidence of the various buyers's employment is irrelevant because stated income is not limited to salary—other sources of income can contribute to a stated income determination.  [Doc 124 at 9] Again, the employment situations of the buyers,  known to Defendant, tends to show that the reported stated income was inflated.  And as was pointed out earlier, although Defendant is free to demonstrate on cross examination that the buyers had other sources of income, the Government is not foreclosed from presenting evidence regarding one very common source of income—employment.

In an argument that seems to simply rephrase his other arguments, Defendant states that the evidence of past relationships with the buyers is irrelevant because he had "no duty as a real estate agent or mortgage broker to verify information provided by the buyers or track changed circumstances in the personal lives of his customers."  [Doc 124

at 14]   According to the *Second Superseding Indictment*, Defendant is charged with

having "knowingly and unlawfully devised and intended to devise a scheme and artifice

to defraud lenders . . . and to obtain money, funds or other property from lenders by

means of materially false and fraudulent pretenses, representations and promises, and by

intentional concealment and omission of material facts."  [Doc 83 at 3]  The scheme, as

described in the *Superseding Indictment*, involved Defendant falsely representing each

buyer's assets and income on a loan application.  [Id. at 4-5]  The *Second Superseding

Indictment* and the wire fraud statute control what the Government is required to prove at

trial, and not some notion of "duty" that is presented by Defendant without citation to

authority.  Defendant's past relationships with the buyers is relevant to whether he

knowingly and materially misrepresented, or directed others to misrepresent, income and

assets on loan applications.

Defendant also takes issue with the Government's intent to elicit testimony

regarding the allegedly modest worth of the uncharged transactions and the "significantly

more expensive" later transactions.  [Doc 124 at 16]  Specifically, the Government

intends to show that "the earlier transactions with the Defendant had involved re-

financing of properties they already owned, or purchases of cheaper homes or rental units,

but the homes in the nine charged transactions were significantly more expensive, making

it more difficult to qualify for financing."  [Doc 107 at 3]  It appears that the Government

is trying to show that the earlier transactions were reasonably legitimate because they

were for less expensive properties, but the charged transactions would not have been

possible for these buyers without misrepresentations of incomes, because the properties were more expensive. Thus, the value of the properties in the charged transactions, when compared to the value of the uncharged transactions, tends to show that Defendant purposefully caused incomes to be inflated in order to achieve the requisite financing for the homes.

Finally, Defendant argues that testimony regarding the ability of the buyers to make their mortgage payments is irrelevant because payments occurred after the charged loan applications were submitted. Defendant, however, ignores the substance of the proffered testimony. It appears that the Government intends to prove that Defendant knew *before* the applications were submitted that the buyers would not be able to make the payments "for very long" unless they received "cash back" after closing. Thus, this purported knowledge is relevant to whether Defendant intended to deceive the lenders—if it was known prior to submitting the applications that the payments would be out of reach for the buyers without some sort of "cash back," it is reasonable to infer that Defendant knew that the stated income was inaccurate.

The Court finds that the Government's evidence proffered is relevant, except for any evidence that Defendant had knowledge of Jodi Powers's financial status simply because he is her brother.

**3.** **Rule 404(b)**

Having established the relevance of the proffered evidence, under Rule 404(b), the Court must continue and determine whether the evidence is offered for a proper purpose

and whether its probative value is substantially outweighed by the potential for unfair prejudice. See Zamora, 222 F.3d at 762. In addition to the relevance determination already made under Rule 401, for the purposes of Rule 404(b), this Court must also ensure that "relevance does not depend on a defendant likely acting in conformity with an alleged character trait." United States v. Commanche, 577 F.3d 1261, 1267 (10th Cir. 2009). Finally, the Court must consider whether a limiting instruction is appropriate in order to make clear that evidence of similar acts is considered only for the specified proper purpose. See Zamora, 222 F.3d at 762.

Turning first to the question of proper purpose, the Government states that the proffered evidence is not offered to demonstrate conformity with prior acts, but instead to show that Defendant acted with intent and with knowledge that the information on the charged loan applications was false. The Government additionally asserts that the proffered evidence is offered to show that based on the histories between the buyers and Defendant, the inflated stated income figures were not made by mistake. Defendant disputes that the evidence is offered for a proper purpose. He argues that the Government intends to use the evidence (1) "to create a false underwriting standard for jurors to apply to or even supplant the underwriting standards that applied to the charged transactions," (2) to "mischaracterize the relationships between and among lender and mortgage broker and borrower," and (3) to "encourage the jury to 'convict a bad man' who deserves to be punished not because he is guilty of the crime charged but because of his prior or subsequent misdeeds." [Doc 124 at 19, 21, 22] He additionally argues that the

Government's proffered purposes are insufficiently articulated.

Defendant continues to argue that the whether he is criminally liable depends on how the lenders handled the loan applications pursuant to specific underwriting standards. He has repeatedly maintained that the various applicable underwriting standards govern whether fraud was committed.  This is simply not the case.  Defendant is being charged with lying, telling straightforward untruths, on loan applications.  Thus, his argument that the Government intends to confuse the jury with false underwriting standards is misplaced, as is his insistence that his only obligation was to give the lender the information that was requested.  To the contrary, the point of inquiry is whether he truthfully reported his clients' financial status at the time the loan applications were submitted.

The government's proffered purpose is clear:  the proposed evidence regarding Defendant's prior interactions with the buyers who purchased the properties involved in the *Second Superseding Indictment* will demonstrate that Defendant had knowledge about the income and employment of the buyers, and by extrapolation, their ability to qualify for sufficient financing.  With this knowledge, a reasonable jury could infer that Defendant intentionally inflated or caused to be inflated the stated incomes on the charged loan applications.  See United States v. Caldwell, 560 F.3d 1202, 1212 (10th Cir. 2009) (affirming the admission of evidence of uncharged transactions, which appeared to be identical to the charged (fraudulent) actions, as evidence of the defendant's knowledge and intent).

Nothing about the uncharged transactions indicates that Defendant is a "bad man" or even that he has been guilty of prior "misdeeds."  The proposed evidence relates to *legitimate* loan transactions.  See United States v. Melvin, 91 F.3d 1218, 1222 (9th Cir. 1996) ("[I]f this [prior] scheme was indeed legitimate, he cannot assert that it prejudiced the jury, or that it was inadmissible evidence of other bad acts.").  The Court finds that the Government has sufficiently articulated a proper purpose, that the evidence of the history between Defendant and the buyers could raise the reasonable inference that he had knowledge of the incomes and employment of the buyers such that he intentionally inflated, or caused to be inflated, the stated income on the charged loan applications.

Defendant also challenges the Government's purpose in eliciting testimony regarding the relative purchase prices of the uncharged and charged transactions.  [Doc 124 at 21]  The Government argues that Defendant "encouraged" the buyers to purchase more expensive properties despite their inability to repay the loans and that this is evidence of a plan or scheme to defraud.  Defendant maintains that the buyers wanted to buy more expensive properties, that he was simply doing his job as a real estate agent, and that the evidence shows no indication of a plan.  I disagree. The progression from the uncharged loans, which were for less expensive properties, to the charged loans, which Defendant allegedly encouraged despite the buyers' inability to pay, could demonstrate a scheme or plan to defraud the lender.

The proffered evidence has already been determined to be relevant under Rule 401, and the additional Commanche relevancy analysis does not render the evidence

inadmissable.  Under <u>Commanche</u>, a court is required to ensure that relevance does not depend on "a defendant likely acting in conformity with an alleged character trait."  577 F.3d at 1267.  In the present case, it is difficult to determine how the proffered prior acts implicate any character trait at all and then how Defendant's subsequent charged conduct could be said to be in conformity with that character trait.  If anything, the prior acts show Defendant acting as a legitimate mortgage broker and real estate agent, engaging in honest conduct.  The evidence of the uncharged transactions is relevant only for the reasons articulated by the earlier analysis, and not because a jury could conclude that Defendant likely acted in conformity with his prior honest conduct.

Turning to the probative and prejudicial nature of the evidence, our Circuit has explained that "[e]vidence that is otherwise admissible under Rule 404 may nonetheless be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  <u>United States v. Moran</u>, 503 F.3d 1135, 1145 (10th Cir. 2007) (internal quotation marks and citation omitted).  To that end, "[u]nfair prejudice in the Rule 403 context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one."  <u>Id.</u> (internal quotation marks and citation omitted).  Defendant makes several arguments regarding the prejudicial nature of the proposed evidence:  (1) the jury could presume that the prior transactions and the charged transactions are comparable; (2) the jury will be confused and believe that the prior transactions constitute criminal conduct; (3) additional documentation and testimony will be necessary to establish the

prior transactions, resulting in undue delay, waste of time, and needless presentation of

cumulative evidence; and (4) ample alternatives exist to "more directly demonstrate to the

jury . . . the material facts of this case."  [Doc 124 at 24-25]

The evidence proffered by the government is highly probative of Defendant's

intent and his knowledge.  Intent to defraud is difficult to prove:

> [b]ecause intent involves the defendant's state of mind, and is difficult to
> prove directly, it is usually proven by circumstantial evidence. A variety of
> circumstantial evidence has been held relevant to infer fraudulent intent.
> Intent may be inferred from evidence that the defendant attempted to
> conceal activity. Intent to defraud may be inferred from the defendant's
> misrepresentations, knowledge of a false statement as well as whether the
> defendant profited or converted money to his own use.

United States v. Prows, 118 F.3d 686, 692 (10th Cir. 1997) (alteration in original)

(quoting Kathleen Flavin & Kathleen Corrigan, Eleventh Survey of White Collar Crime:

Mail Fraud and Wire Fraud, 33 Am.Crim. L.Rev. 861, 869-70 (1996) (citations and

internal punctuation omitted)).  The evidence of the uncharged transactions raises an

inference that Defendant knew that the stated income reported on the charged loan

applications was false and is thus probative of intent.

Turning to prejudice, Defendant has not identified any "improper basis" on which

the jury could reach its decision, nor has he explained how "the voluminous lender's

records, title company records, and testimony of the buyers and underwriters" could

"more directly demonstrate" the material facts of the case.  With a proper limiting

instruction, the danger that the jury will view the uncharged conduct as criminal is

minimal, if any.  And finally, the presentation of additional testimony and documentation does not create "undue delay" if the evidence is probative of intent.  Nor is such a presentation a waste of time or cumulative evidence if it goes to establishing an element of the charged crimes.

On balance, the proposed evidence is not substantially more prejudicial than probative; it is relevant; and it is offered for a proper purpose.  Defendant is invited to submit limiting instructions to the Court for review.  See Zamora, 222 F.3d at 762 ("[P]ursuant to Fed.R.Evid. 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.").  Defendant's objections to the Government's proffer of evidence pursuant to Rule 404(b) are overruled.

**E.      Document 112—Vaughan Redactions**

In *Defendant's Motion in Limine to Exclude Evidence of Employment by the Vaughan Company and to Redact Documentary Evidence* [Doc. 112], Defendant seeks to preclude the introduction of any evidence relating to his employment with Vaughan Company Realtors (Vaughan), a qualifying broker for whom he worked as a real-estate sales agent at the time of the charged conduct.  [Doc. 112 at 1-2].  Douglas Vaughan, founder and majority owner of Vaughan, is the focus of a current SEC investigation, having been charged with running an $80 million Ponzi scheme. [Id.; Exh. A at 1]. He is currently facing federal criminal charges in the District of New Mexico.  The SEC and the recent criminal indictment have generated considerable publicity. Defendant argues that

any reference to his employment by Vaughan should be excluded because (1) the identity of his employer is not relevant; and (2) even if it were relevant evidence of his connection to Vaughan would be substantially more prejudicial than probative.  [Doc. 112 at 3]. Defendant also asks that, prior to submission to the jury, all exhibits be redacted to remove any reference to Vaughan.  [Id.].

As stated at the hearings on December 7, 2010 and February 9, 2011, the Court finds that documentary references to Vaughan are substantially more prejudicial than probative, and the Government is therefore required to redact its exhibits to eliminate references to Vaughan. Under Federal Rule of Evidence 403, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Evidence is unfairly prejudicial if it has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily an emotional one."  United States v. Magleby, 241 F.3d 1306, 1315 (10th Cir. 2001) (internal quotation marks and citation omitted).

That Defendant was a Vaughan employee would seem to have little, if any, probative value.  The government maintains that because Defendant was required to operate under a qualified broker, and his qualified broker was Vaughan, his connection to Vaughan Company Realtors is relevant. [Doc. 127 at 2-3].  I disagree.  That Mr. Powers' alleged scheme to defraud may have been facilitated as a result of his work with a qualified broker likely is relevant.  For the government to identify the company for which

the qualifying broker worked, however, is not.  Additionally, what tends to make the Vaughan evidence substantially more prejudicial than probative is the fact that knowledge of the alleged Ponzi scheme, which purportedly deprived hundreds of investors of millions of dollars, is likely widespread.  The Court finds a high risk of unfair prejudice if there appears to a connection between Mr. Powers and Mr. Vaughan and/or Vaughan Company Realtors.

For these reasons, *Defendant's Motion In Limine To Exclude Evidence Of Employment By The Vaughan Company And To Redact Documentary Evidence* [Doc 112] is granted. The Government shall redact its exhibits accordingly, and the parties will craft and submit a limiting instruction that will be read to the jury in the event that a witness makes reference to the connection between Defendant and Vaughan.

## F.      Document 114—Immunity

For the reasons stated on the record at the Call of the Calendar, *Defendant's Motion in Limine to Preclude Testimony by Persons Granted Immunity but Not Disclosed* [Doc. 114] is denied.

## G.      Documents 115 and 116—References to Primary Residence and State Income

In these motions, considered together because of their nearly identical nature, Defendant seeks (1) an order preventing the government from introducing any evidence or eliciting any testimony concerning alleged misrepresentations about the intent of buyers to occupy properties as primary residences "without prior disclosure of the complete underwriting standards and notes required for each loan[;]" [Doc. 115 at 6], and

(2) an order similarly limiting the government's introduction of evidence and testimony as it relates to misrepresentations and/or omissions regarding "'stated income' reported on loan applications without prior disclosure of each lender's 'underwriting standards and notes. . . .'" [Doc. 116 at 1].  His position appears to be that it is not possible to assess the falsity of (1) any statements concerning buyers' intent to occupy properties as primary residences [Doc. 115 at 4] or (2) misrepresentations and/or omissions as to applicants' income, [Doc. 116 at 3] in the absence of the underwriting standards and other documents at issue.

The government contends that, under the circumstances, the underwriting standards are not relevant because, notwithstanding any information contained therein, no lender would have approved a mortgage had it known that the applicant did not intend to occupy the property as a primary residence but, instead, intended to use it for investment purposes.  Instead, argues the government, these applications would have been denied out-of-hand, and it is able to prove this point with documentary evidence including the buyers' Form 1003's. [Doc. 133 at 3-7].  Similarly, lenders would not have needed to consult underwriting standards had they know that the buyers lied about their income, as "[a]ny significant misstatements about income, if known by the lenders at the time, would have stopped the process at that point without reference to any underwriting standards." [Doc. 134 at 2]

Among other things, the government will have to prove beyond a reasonable doubt that, as part of his alleged overall scheme, Defendant "employed false or fraudulent

pretenses, representations, or promises that were material."  A representation is false "if it

is known to be untrue . . ."    TENTH CIRCUIT PATTERN CRIMINAL JURY INSTRUCTIONS

2.57 (2005).   Additionally, a false statement is material if it "has a natural tendency to

influence, or is capable of influencing, the decision of the person or entity to which it is

addressed."  Id.   In this case, the government intends to introduce loan applications

whereby the applicant has checked at least two separate boxes indicating that the

residence in question would serve as a primary residence, then signed his or her name in

acknowledgment of his or her understanding that it is a federal offense to provide false

information. [Doc. 133; Exh. 1].  The government also has proffered "Occupancy

Affidavits" which, again, ask the applicant to swear under oath that he or she intends to

use the property in question as his or her primary residence. [Id. Exh. 2].  The government

expects its lender-witnesses to testify that, had they known that the applicants did not

intend to use the properties as primary residences, they would never have approved 100%

loan-to-value mortgages at the interest rates secured in this case. [Doc. 133 at 6].  The

government also intends to call as witnesses the buyers, who are expected to testify that

they intentionally and grossly exaggerated their incomes. [Doc. 134 at 5].  This testimony

will be backed up by bank statements, and lender-witnesses are again expected to testify

that, had they known the truth about the buyers' incomes, no loans would have been

approved. [Id. at 5-6].  Consequently, the lenders would not have consulted any

underwriting standards because there would have been no need; rather, based on the

applications themselves (had they been truthful), the lenders would have flat-out rejected

the loan requests.

Our Tenth Circuit has upheld wire-fraud convictions where lenders were fraudulently misled as to the circumstances under which they were making loans, and where they testified that they would not have approved the loans had they been fully informed of the relevant facts.  Such was the case in United States v. Baum, where the defendant-realtor unsuccessfully challenged the sufficiency of the evidence underlying his convictions on six counts of wire fraud and seven counts of money laundering. United States v. Baum, 555 F.3d 1129, 1130 (10th Cir. 2009).  Rejecting sufficiency-based arguments put forth by the defendant, the circuit concluded that "there was extensive evidence that the mortgage lenders were not fully informed about the financial transactions regarding the home purchases[, including] phony sales prices, undisclosed addenda, and false information about the borrowers' finances."  Id. at 1132.  Such evidence, continued the circuit, "easily support[ed] the verdicts."  Id.

Documentary evidence, in the form of signed loan applications, sworn affidavits of occupancy, and bank statements, coupled with testimony from lenders and borrowers, will allow the government to make its case that the loan applications contained false and material statements or misrepresentations.  The underwriting standards Defendant insists be disclosed are unnecessary.

Accordingly, Defendant's *Motion in Limine to Preclude Evidence Alleging Misrepresentations Concerning the Intent to Occupy Property as "Primary Residence"* [Doc. 115] and Defendant's *Motion in Limine to Preclude Evidence Alleging*

*Misrepresentations and/or Omissions Concerning "Stated Income" on Loan Applications*

[Doc. 116] are denied.

**H.     Document 118—Incomplete Loan Files**

For the reasons stated on the record at the December 7, 2010 hearing, the Call of

the Calendar, and in the *Memorandum Opinion And Order* [Doc. 203] addressing

Defendant's *Motion to Dismiss Counts 5, 6, 9 and 10 (Cameron Counts) of the Second*

*Superseding Indictment* [Doc. 92], Defendant's *Motion in Limine to Preclude*

*Introduction of Incomplete Loan File and Exclude Testimony Concerning Materiality of*

*Alleged Misrepresentations and Omissions as Related to "Cameron" Counts (Counts 5,*

*6, 9 and 10)* [Doc. 118] is denied.

**I.     Document 119—Industry Slang**

Through *Defendant's Motion in Limine to Prohibit Use of Mortgage Fraud and*

*Other "Slang"* [Doc. 119], he seeks an order prohibiting the government from eliciting

testimony whereby witnesses would use such "slang" terms as "mortgage fraud," "shell

company," "friendly appraisal," "straw borrower," "bird dog," and others on grounds that

these terms are (1) irrelevant; (2) substantially more prejudicial than probative; and (3)

inappropriate.  [Doc. 119 at 1-3].  The Government responds that (1) use of the term

"fraud" is inescapable, and  (2) it would like the opportunity to use the term "shell

company" in its closing argument if the evidence at trial shows that K&E was, in fact, a

shell company, but (3) the terms "friendly appraisal," "straw borrower," and "bird dog"

do not appear to be applicable here. [Doc. 129 at 2-3].

Use of the term "fraud" has already been discussed in Section II.B.  With respect to the terms "friendly appraisal," "straw borrower," and "bird dog," the Government states that these terms "do not appear on their faces to apply in this case." [Doc. 129 at 3].  At the Call of the  Calendar, the Government further confirmed its intention to avoid the phrases.  Notwithstanding that the term "shell company" is used in the Second Superseding Indictment, at least one court has concluded that "there is no generally-accepted definition for the term 'shell company[.]'"  United States v. Crabbe, 556 F.Supp.2d 1217, 1230 (D.Colo. 2008) (deeming inadmissible proffered expert testimony that defendants' partnership "was a shell company with no substantive business activity").  The Government need not use the vague term, but instead may make its point about K&E Construction clear by means of pointing to the relevant evidence and drawing its intended conclusions in clearly defined, appropriate terms.

This *Motion* is therefore granted in part and denied in part.

## J.    Objections to Exhibits

At the Call of the Calendar, the parties sequentially identified their respective objections to exhibits, and the Court made preliminary rulings, based on the proffers made at the hearing.  The parties are reminded that despite the preliminary admittance of certain exhibits, counsel is nevertheless required to lay proper foundation and tender each exhibit prior to presenting that exhibit to the jury.

As a result of those proceedings, *United States' Motion To Supplement Its Exhibit List (Doc. 108) With Requested Substitutions And Additions* [Doc 132]; *United States'*

*Second Motion To Supplement Its Exhibit List (Doc 108) With Requested Additions* [Doc

156]; *United States' Third Motion To Supplement Its Exhibit List (Doc 108) With

Requested Additions* [Doc 162] are granted.

**K.**     **Witness List**

On January 12, 2011, the Government filed a *Supplement To United States'

Witness List (Doc. 109)* [Doc 163] and on January 20, 2011, the Government filed its

*Second Supplement To United States' Witness List (Doc. 109)* [Doc 170].  On January 14,

2011, Defendant filed a response to the Government's first supplement and objected to

the additional witnesses.  [Doc 167]  At the Call of the Calendar, Defendant stated that

continuance of the trial alleviated the prejudice of the late addition of witnesses, and he

withdrew his objection.  Accordingly, the Government's January 20, 2011 *Motion* [Doc

170] is granted.

**III.**     **CONCLUSION**

**IT IS THEREFORE ORDERED** that *Motion in Limine Regarding Contents of

Recorded Telephone Calls and "Body Wire" Recordings* [Doc. 37] is **DENIED AS

MOOT**;

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Prohibit Use

of Certain Terms by Lay and Expert Witnesses and Preclude Government from Offering

Testimony that Certain Conduct is Fraud* [Doc. 93] is **GRANTED IN PART AND

DENIED IN PART**;

**IT IS FURTHER ORDERED** that Defendant's *Motion in Limine to Require*

*Disclosure of Order of Witnesses Prior to Testifying* [Docs. 111, 113] is **DENIED**;

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Exclude Evidence of Employment by the Vaughan Company and to Redact Documentary Evidence* [Doc. 112] is **GRANTED** and the Government shall redact references to the Vaughan Company from all documentary evidence;

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Preclude Testimony by Persons Granted Immunity but Not Disclosed* [Doc. 114] is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's *Motion in Limine to Preclude Evidence Alleging Misrepresentations Concerning the Intent to Occupy Property as "Primary Residence"* [Doc. 115] and Defendant's *Motion in Limine to Preclude Evidence Alleging Misrepresentations and/or Omissions Concerning "Stated Income" on Loan Applications* [Doc. 116] are **DENIED**;

**IT IS FURTHER ORDERED** that Defendant's *Motion in Limine to Preclude Introduction of Incomplete Loan File and Exclude Testimony Concerning Materiality of Alleged Misrepresentations and Omissions as Related to "Cameron" Counts (Counts 5, 6, 9 and 10)* [Doc. 118] is **DENIED**;

**IT IS FURTHER ORDERED** that *Defendant's Motion in Limine to Prohibit Use of Mortgage Fraud and Other "Slang"* [Doc. 119] is **GRANTED IN PART AND DENIED IN PART**;

**IT IS FURTHER ORDERED** that *United States' Motion To Supplement Its Exhibit List (Doc. 108) With Requested Substitutions And Additions* [Doc 132], *United*

*States' Second Motion To Supplement Its Exhibit List (Doc 108) With Requested Additions* [Doc 156], and *United States' Third Motion To Supplement Its Exhibit List (Doc 108) With Requested Additions* [Doc 162] are **GRANTED**;

**IT IS FURTHER ORDERED** that the Government's *Second Supplement to United States' Witness List (Doc 109)* [Doc 170] is **GRANTED**.

**IT IS FURTHER ORDERED** that the parties meet and confer for the purpose of crafting proposed limiting instructions for use at trial, as discussed here; and that proposed limiting instructions be provided to the Court, for review, on or before **April 1, 2011.**

**IT IS FURTHER ORDERED** that each pretrial evidentiary ruling set forth herein is subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**SO ORDERED** this 30th  day of March, 2011, in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
United States District Judge