IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,       )
                                )
                 Plaintiff,     )
                                )       CRIMINAL NO. 09-3065 MCA
        vs.                     )
                                )
KEVIN POWERS,                   )
                                )
                 Defendant.     )

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendant's Motion for New Trial Based on

Newly Discovered Evidence of a Conflict of Interest [doc. #264].

In his Motion, filed on July 26, 2011, Kevin Powers ("Defendant") argues "for a new trial

for the reason that a conflict of interest materially impaired his Sixth Amendment right to

effective assistance of independent, conflict-free counsel, his right to a fair trial and to due

process of law." The "newly discovered evidence" to which Defendant cites is an alleged

conflict of interest by Defendant's former counsel. The Court has considered Defendant's

arguments in favor of granting a new trial, finds them without merit, and denies the same.

**I.      BACKGROUND**

Defendant was a real estate agent and a mortgage broker in Albuquerque, New Mexico,

involved in purchasing and selling residential real estate properties, as well as obtaining

financing for the purchasers of residential properties. Defendant's association with the law firm,

Bowles & Crow, began on January 28, 2008, after Defendant became the subject of a federal

investigation concerning possible mortgage fraud. Defendant hired Jason Bowles to represent

him in this case. As of January 2008, the investigation was still in its early stages.

Pauline Walker is one of the six buyers who was involved in a charged transaction and

who testified against Defendant at trial.  The FBI initially interviewed Ms. Walker on February 20, 2008.  She was not represented by counsel at this time.  During the FBI's interview, Ms. Walker provided the FBI with information about the transaction underlying what would be Counts 9 and 10 of the indictment against Defendant, which was initially filed on October 21, 2009.

By early 2009, the Government wished to pursue the possibility of Ms. Walker's continuing cooperation.  The FBI attempted to deliver a target letter, dated April 24, 2009, to Ms. Walker at her Albuquerque address but was unsuccessful.  Ms. Walker was thereafter located in Colorado, and after receiving the target letter, received a Financial Affidavit form from the United States District Court in Albuquerque on or about June 29, 2009, regarding possible appointment of counsel.  On July 29, 2009, B.J. Crow, also of Bowles & Crow, was appointed by United States Magistrate Judge W. Daniel Schneider to represent Ms. Walker.

The Assistant United States Attorney, Mary Higgins, sent a letter to Mr. Crow on August 18, 2009, wherein Mr. Crow was notified that the Government wished to obtain Ms. Walker's continuing cooperation in an ongoing investigation that had identified Defendant as the target.  A Non-Prosecution Agreement was attached to the letter for consideration by Mr. Crow and Ms. Walker.  Mr. Crow then sent a letter, dated August 20, 2009, to Ms. Higgins stating that he was unaware that Ms. Walker may be a witness in Defendant's case.  Mr. Crow informed Ms. Higgins that because his firm also represented Defendant, there was an obvious conflict of interest that required him to file a motion requesting to withdraw from representing Ms. Walker.  Ms. Higgins responded in a letter, dated August 26, 2009, that she took no position on the motion.  On October 27, 2009, Mr. Crow filed a sealed motion to withdraw as counsel for Ms.

Walker in a separate case,[1] which set forth the basis for his reasons to withdraw, as just described.

The initial indictment against Defendant was filed on October 21, 2009.  Defendant was arrested on November 4, 2009.  On November 5, 2009, John Van Butcher of the Federal Public Defender's office was appointed to represent Defendant.[2]  On November 6, 2009, Mr. Butcher filed a motion to withdraw as Defendant's counsel, due to a conflict of interest arising out of his representation of Chris Sena, a witness that was also cooperating with the FBI in Defendant's case.  Mr. Butcher's motion to withdraw was granted by the Court on November 10, 2009, which is the same day that Defendant's current counsel was appointed to represent him.  Defendant was arraigned at the United States District Court in Albuquerque on November 18, 2009.  The Order terminating appointment of Mr. Crow as counsel for Ms. Walker in her separate case, was filed on November 20, 2009.  Ms. Walker was subsequently represented by Amy Sirighano.[3]  On December 14, 2009, a superseding indictment was filed, and Defendant was permitted to waive arraignment on December 22, 2009.  A second superseding indictment was filed on July 27, 2010.  Defendant's trial occurred in April 2011, with the jury finding Defendant guilty on April 20, 2011.

---

[1]Case No. 09 MR 275 WJS.

[2]It is not clear based on the record and pleadings in this case when Bowles & Crow's representation of Defendant actually ended.  While the original indictment was filed on October 21, 2009, Defendant appears to allege that Bowles & Crow was still representing him at this time.  However, by November 5, 2009, Defendant had been appointed counsel from the Federal Public Defender's office and Defendant does not allege any further representation by Bowles & Crow following the filing of the initial indictment.

[3]On December 16, 2009, Ms. Walker signed a non-prosecution agreement with the United States.

## II.     DISCUSSION

Defendant contends that the representation of both Defendant and Ms. Walker by Bowles & Crow created a conflict of interest that purportedly lasted for 115 days, from July 29, 2009 until November 20, 2009.  Defendant asserts in his Motion that he is entitled to a new trial because the existence of this conflict of interest by his former counsel constitutes newly-discovered evidence that demonstrates he was denied a fair trial and effective assistance of counsel in violation of the Sixth Amendment.

### A.     NEWLY DISCOVERED EVIDENCE

Rule 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A motion for a new trial asserted on the ground of newly discovered evidence "must be filed within three years after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(1).  As Defendant was found guilty on April 20, 2011, and his Motion was filed on July 26, 2011, Defendant's Motion is timely.  However, "[a] motion for a new trial based on newly discovered evidence is generally disfavored and 'should only be granted with great caution.'"  *United States v. Gwathney*, 465 F.3d 1133, 1143-44 (10th Cir. 2006), *cert. denied*, 550 U.S. 927 (2007), *citing United States v. Combs*, 267 F.3d 1167, 1176 (10th Cir. 2001).  In order to obtain a new trial based on newly discovered evidence not involving a *Brady* violation, Defendant must show the following: 1) the evidence was discovered after trial; 2) the failure to learn of the evidence was not caused by his own lack of diligence; 3) the new evidence is not merely impeaching; 4) the new evidence is material to the principal issues involved; and 5) the new evidence is of such a nature that in a new trial it would probably produce an acquittal.  *Id.*

4

Defendant argues against the standard used in *Gwathney*, and instead advocates for the use of a test adopted by the Second Circuit Court of Appeals in *United States v. Curcio*, which would address whether Defendant had the opportunity to waive any conflict. 680 F.2d 881 (2d Cir. 1982). The Court rejects Defendant's argument. First, the Court finds that *Curcio* is non-binding on this Court. Second, even if *Curcio* were the law of the Tenth Circuit, the Court finds it distinguishable from this case.[4]

In regards to the first element in *Gwathney***,** Defendant states that he and his current counsel did not discover the evidence of the conflict until they were reviewing the presentence report in his case. The Court is satisfied by this explanation and finds Defendant has sufficiently shown the first element. However, a favorable finding for Defendant on the second element requires the Court to believe that during the twenty-one months that Defendant's current counsel has represented him, neither Defendant nor his counsel were able to discover that a conflict existed due to Defendant's former counsel representing Ms. Walker. In the Court's review of the docket of the case involving Ms. Walker, it is evident that, for an amount of time, she was being represented by B.J. Crow of Bowles & Crow, the same firm that represented Defendant after he

---

[4]*Curcio* concerned two defendants asserting their right to be represented at trial by the same attorney, even though the attorney's concurrent representation of them created a conflict of interest. The district court was therefore required to alert the defendants to the dangers of representation by an attorney with divided loyalties, and because the defendants persisted, to obtain a knowing and intelligent waiver by the defendants of their right to conflict-free representation. The district court disqualified the attorney because the court did not believe that the defendants had made a knowing and intelligent waiver. The district court's order was vacated and the case was remanded because the Second Circuit found no reason the defendants could not make a knowing and intelligent election to be represented by their attorney even though there was a conflict of interest. *See Id.* As the Court will further discuss in this Order, the Court was under no obligation to conduct an inquiry into whether a conflict of interest existed, in this case, or to discuss the dangers of joint representation. Defendant's trial counsel did not have a conflict of interest and was not burdened with the issue of concurrent representation.

became the target of the federal investigation in early 2008, and continued to represent him until at least October 2009.  The Court does not accept, that in the sixteen months that Defendant and his counsel were preparing for his trial, that it would have been impossible for the conflict to have been discovered through the exercise of diligent research into Ms. Walker, who was a significant witness at Defendant's trial.  Defendant appears to allege that it was neither his, nor his trial counsel's responsibility to discover any conflict, when he states that "[a]t no time from and after July 29, 2009 was [Defendant] informed by his attorneys, Jason Bowles, B.J. Crow and Bowles & Crow, of the fact that B.J. Crow had been appointed for and represented Pauline Walker for a period of 115 days."  The failure by prior counsel to notify Defendant or his current counsel of any conflicts of interest his prior counsel might have had does not excuse Defendant's, or his trial counsel's, responsibility to use due diligence to discover any facts that might have been material to Defendant's case or resulted in an acquittal at trial.  This finding by itself is sufficient to halt the Court's analysis of Defendant's claims and consequently permit the Court to deny his motion for a new trial.  Nevertheless, giving Defendant and his counsel the benefit of the doubt that the failure to learn of the conflict of interest prior to Defendant's trial was not caused by their own lack of diligence, the Court will proceed with its analysis.

     In its consideration of the third and fourth elements, the Court finds that the evidence is not merely impeaching and the evidence to be material to the principal issues involved.[5]  In order to determine whether Defendant can satisfy the fifth element, that the new evidence is of such a nature that in a new trial it would probably produce an acquittal, the Court must discuss the

---

[5]In its determination on the fourth element, the Court is only recognizing the possibility that the existence of a conflict of interest by Defendant's counsel can adversely affect Defendant's right to a fair trial and effective assistance of counsel.  The Court is not commenting on the weight of the evidence at this point of its analysis, with respect to this element.

merits of Defendant's arguments.

**B.      SIXTH AMENDMENT VIOLATION**

Defendant argues that he was denied his right to a fair trial and effective assistance of counsel because it is a violation of the Sixth Amendment "if a trial court fails to inquire in to a potential conflict of interest arising from defense counsel's prior representation where the trial court knew or reasonably should have known of the potential conflict." [Motion, doc. #264, pg. 10]. In its analysis of Defendant's arguments, the Court will consider: 1) whether the Court had an obligation prior to trial to conduct an inquiry into a conflict of interest pursuant to Rule 44 of the Federal Rules of Criminal Procedure; and 2) whether the conflict of interest resulted in Defendant being denied his right to a fair trial and effective assistance of counsel as guaranteed by the Sixth Amendment.

**1.      Court's Obligation to Conduct an Inquiry Under Rule 44**

Defendant requests a new trial based on his prior counsel's alleged conflict of interests and the Court's failure to conduct an inquiry pursuant to Rule 44 of the Federal Rules of Criminal Procedure prior to trial to address the conflict. Rule 44 requires a court to inquire "about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation." Fed. R. Crim. P. 44. The Rule further states that "[u]nless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel." *Id.* The Court finds Defendant's argument that the Court should have conducted an inquiry to be without merit.

First, several of Defendant's arguments are focused on conflicts of interest arising as a

result of concurrent representation.  In the Court's review of the cases cited by Defendant, the facts tend to reveal circumstances where two or more defendants, whether tried together or separately, were being represented by the same counsel at the time of their trials.  *See, e.g. Cuyler v. Sullivan*, 446 U.S. 335 (1980)[6]; *Holloway v. Arkansas*,[7] 435 U.S. 475 (1978).  The Court finds the facts of these cases inapposite to the circumstances in Defendant's case.[8]  "[T]he Federal Rules of Criminal Procedure treat concurrent representation and prior representation differently, requiring a trial court to inquire into the likelihood of conflict whenever jointly charged defendants are represented by a single attorney (Rule 44(c)), but not when counsel previously represented another defendant in a substantially related matter, even where the trial court is aware of the prior representation."  *Mickens v. Taylor*, 535 U.S. 162, 175 (2002).  Rule 44 is specific in its application.  Rule 44 instills a duty on the Court to conduct an inquiry regarding "the propriety of joint representation."  This was obviously not an issue before the Court in this case.  Defendant was the sole defendant on trial, and Defendant's trial counsel was not faced with the burden of representing multiple defendants.  The Court was therefore under no obligation to discuss the

---

[6]In *Sullivan*, three defendants were represented by the same two attorneys through separate trials.  One of the defendants sought *habeas* relief after asserting that his counsel represented potentially conflicting interests.  This case was remanded to determine whether the performance by defendant's lawyer was adversely affected by an actual conflict of interest.  *Id.*

[7]In *Holloway*, three defendants were represented by the same attorney.  The trial court refused to consider the appointment of separate counsel despite the defense lawyer's argument that his clients' interests were in conflict.  Under those circumstances, the defendant was deprived of the effective assistance of counsel, and no showing of prejudice was required to reverse the conviction.  *Id.*

[8]Both *Sullivan* and *Holloway* "stressed the high probability of prejudice arising from multiple concurrent representation and the difficulty of proving that prejudice."  *Moss v. United States*, 323 F.3d 445, 460 (6th Cir. 2003).

issue of separate representation, as this was an irrelevant issue,[9] or to advise Defendant of the right to effective assistance of counsel.  Furthermore, "the 10th Circuit held that the Sixth Amendment 'does not require a [district] court to initiate an inquiry' under Rule 44(c) where, as here, 'no party either objects to multiple representation or raises a conflict issue.'"  *United States v. Urias-Bojorquez*, 205 Fed. Appx. 706, 707 (10th Cir. 2006) (quoting *United States v. Burney,* 756 F.2d 787, 791 (10th Cir.1985).  Consequently, the Court finds that because Defendant's trial counsel owed no duty to any other defendant, and no party either objected to multiple representation or raised a conflict issue, the Court had good cause to believe that no conflict was likely to arise.

Second, even if Defendant's former counsel had a conflict of interest with Ms. Walker, Rule 44 appears to not be triggered unless  "two or more defendants have been charged jointly under Rule 8(b)."  Fed. R. Crim. P. 44.  The original indictment charging Defendant was filed on October 21, 2009.  Ms. Walker was not charged in this indictment.  Consequently, a Rule 44 inquiry was not required.

The Court, therefore, finds Rule 44 to be inapplicable.  The circumstances of this case do not demonstrate that the Court had a duty to inquire into whether there was a conflict of interest. *See Mickens*, 535 U.S. at 168-69 (discussing when a court has a duty to inquire into a potential conflict of interest).  Defendant's arguments are based on concurrent representation by his former counsel.  The issue of joint representation was not an issue that was before the Court, and Defendant's trial counsel did not owe a conflicting duty to another defendant, due to the absence

---

[9]As the Government argues, "Defendant had conflict-free counsel appointed at the time of arraignment on the initial indictment, and had continued representation of conflict-free counsel through trial some 16 months later, [therefore] any pre-trial hearing on the alleged conflict would have been superfluous because the remedy that would have been available to Defendant -- the appointment of conflict-free counsel -- had already occurred."

of multiple representation at the time trial.  Rule 44 is also only triggered when two or more

defendants are charged jointly under Rule 8(b).  That was not the situation in this case.

Accordingly, as there was not good cause to believe that any conflict of interest was likely to

arise, the Court finds that it was not required to conduct a Rule 44 inquiry and that any failure to

conduct any inquiry did not result in a violation of Defendant's Sixth Amendment rights.[10]  The

Court will now address whether an actual conflict of interest by Defendant's former counsel

resulted in Defendant being denied a fair trial and effective assistance of counsel in violation of

the Sixth Amendment.  *See Urias-Bojorquez*, 205 Fed. Appx. at 707.

### 2.    Fair Trial and Ineffective Assistance of Counsel Claims

The Sixth Amendment guarantees a right to representation free from conflicts of interest.

*Wood v. Georgia*, 450 U.S. 261, 271 (1981).  An actual conflict of interest exists if the interests of

the attorney and the defendant "diverge with respect to a material factual or legal issue or to a

course of action."  *Sullivan*, 446 U.S. at 356 n. 3.  The Supreme Court stated in *Mickens* that "we

think 'an actual conflict of interest' meant precisely a conflict *that affected counsel's performance*

— as opposed to a mere theoretical division of loyalties."  *Mickens*, 535 U.S. at 171 (emphasis in

original).  The Court further stated that the "actual conflict of interest" was "shorthand for the

statement in *Sullivan* that 'a defendant who shows that a conflict of interest *actually affected the*

*adequacy of his representation* need not demonstrate prejudice in order to obtain relief.'"  *Id.*

(quoting *Sullivan*, 446 U.S. at 349-350) (emphasis in original).   "Prejudice is presumed only if

---

[10] Furthermore, because Defendant's former counsel was no longer representing him and since Defendant's trial counsel was not operating under a conflict of interest, the Court was under no obligation to conduct a hearing pursuant to the procedures set out in *Crucio*.  *See Crucio*, 680 F.2d 881 (2d. Cir. 1982); s*ee also United States v. Johnson*, 265 Fed. Appx. 8, 10 (2d Cir. 2008) ("Since the record presents no evidence that the district court reasonably should have known of any actual conflict, no *Curcio* hearing was required.").

the defendant demonstrates that [1] counsel 'actively represented conflicting interests' and [2] that 'an actual conflict of interest adversely affected his lawyer's performance.'" *See Strickland v. Washington*, 466 U.S. 668, 692 (1987) (quoting *Sullivan*, at 350).  The Court will also consider whether prejudice may be presumed under the standard set forth in *United States v. Cronic*, 466 U.S. 648 (1984).  The presumption of prejudice in these situations provides specific exceptions to the standard set forth in *Strickland* for determining the existence of ineffective assistance of counsel.  The Court will first determine whether either of these exceptions apply before considering whether the alleged conflict by Defendant's former counsel resulted in ineffective assistance of counsel by his trial counsel.

### i.      Active Representation of Conflicting Interests

Defendant argues that there was an apparent and material conflict of interest caused by the appointment of Mr. Crow as counsel for Ms. Walker, which lasted from July 29, 2009 until November 20, 2009.[11]  However, Defendant has not shown evidence of anything his former counsel did during this time that demonstrates that he was actively representing conflicting

---

[11]Defendant argues that any legal effect of Mr. Crow withdrawing from his representation of Ms. Walker did not occur until the court granted his motion to withdraw.  However, there is no evidence in the record stating the date that Ms. Walker was informed that Mr. Crow would be unable to represent her due to a conflict of interest, or whether she was ever informed of this situation.  Even if the Court accepts Defendant's argument that Mr. Crow's representation of Ms. Walker continued until November 20, 2009, and not August 20, 2009 (when he notified the Assistant United States Attorney that he would not be able to represent Ms. Walker due to the conflict with Defendant), or October 27, 2009 (when Mr. Crow filed the motion to withdraw as counsel for Ms. Walker), the Court finds that any conflict that was left unresolved up to the November 20th date existed only as to Ms. Walker, and not Defendant.  Any conflict of interest that existed as to Defendant actually ceased November 5, 2009, at the latest, when Mr. Butcher was appointed as counsel for Defendant.  It had certainly ended by November 10, 2009, when Defendant's current counsel, who represented Defendant at trial, was appointed.  Regardless of this determination, both the November 5th and 10th dates are prior to Defendant's arraignment on November 18, 2009, and the filing of the superseding indictment on December 14, 2009.

interests.

While the concurrent representation of Defendant and Ms. Walker presented the potential for Defendant's former counsel to be representing conflicting interests, the facts in this case do not demonstrate that Mr. Crow was *actively* representing conflicting interests.  In his affidavit filed with the United States' Response to Defendant's Motion for a New Trial, Mr. Crow states that at the time he was appointed to represent Ms. Walker, his "information was that she has potential criminal liability in federal court and [he] was appointed to represent her as a potential witness." (Response, Affidavit of B.J. Crow, Esq. [doc. #267-9, pg. 1]).  Mr. Crow further states that he "had no information at the time [he] was appointed to represent [Ms. Walker] that her potential criminal liability was related to the investigation of [Defendant]." *Id.*  As soon as Mr. Crow found out about Ms. Walker being a potential witness in Defendant's case, Mr. Crow sent a letter to the Assistant United States Attorney, Ms. Higgins, informing her of the conflict and notifying her of his intention to withdraw from his representation of Ms. Walker.[12]  *Id.* at 2.  Mr. Crow states that "[b]etween [his] appointment on July 29, 2009, and August 18, 2009, when [he] became aware of the conflict in representing Ms. Walker, to the best of [his] recollection [he] had absolutely no communication with Ms. Walker.  *Id.*  In addition, Mr. Crow states that he had no communication with Ms. Walker after August 18, due to his knowledge of a conflict in

_____

[12]While Defendant questions the time it took for his former counsel to eventually file the motion to withdraw from representing Ms. Walker, Mr. Crow did respond to the Government within two days of discovering the conflict.  The Court believes that the conflict arose inadvertently and Defendant's former counsel acted in good faith in disposing of the potential conflict.  *See Pamlab, L.L.C. v. Hi-Tech Pharmacal Co.*, 2009 WL 77527, at *3 (D. Colo. Jan. 9, 2009) ("When a lawyer or law firm suddenly finds itself in a situation of simultaneously representing clients who either are presently adverse or are on the verge of becoming adverse, it may not simply drop one client like a "hot potato" in order to treat it as though it were a former client for the purpose of resolving a conflict of interest.").

representing her, and that his records do not reflect that he had any contact with Ms. Walker. *Id.* In support of this statement, Mr. Crow states that he also did not submit any vouchers for payment under the Criminal Justice Act. *Id.* Mr. Crow explains that if he had had any contact or meetings with Ms. Walker, he would have submitted a voucher. *Id.* Mr. Crow further states in his affidavit that "[i]n [his] representation of Ms. Walker, at no time did [he] share with her any confidential information [his] firm received through [its] representation of [Defendant]."[13] *Id.* The Court accordingly finds prejudice cannot be presumed because the facts fail to show that Defendant's former counsel was actively representing conflicting interests.[14]

### ii.    Adverse Effect on Counsel's Performance

To demonstrate a Sixth Amendment violation where a trial court fails to inquire into a potential conflict of interest about which it knew or reasonably should have known, Defendant must establish that a conflict of interest adversely affected counsel's performance. *Mickens*, 525 U.S. at 167-68; *see also Sullivan*, 446 U.S. at 348 (stating that a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his

---

[13]This statement is consistent with Ms. Walker's testimony at trial. At trial, Ms. Walker testified that, while she remembered having counsel prior to Amy Sirighano representing her, she could not recall her prior counsel's name or having any communication with him.

[14]As the circumstances of Defendant's claims are unusual, the Court feels compelled to also address the issue of successive representation. "[T]he most common example of an actual conflict of interest arising from successive representation occurs where an attorney's former client serves as a government witness against the attorney's current client at trial." *Moss v. United States*, 323 F.3d 445, 460 (6th Cir. 2003)*; see also, e.g., United States v. McCutcheon,* 86 F.3d 187, 189 (11th Cir. 1996); *United States v. Flynn,* 87 F.3d 996 (8th Cir. 1996); *Enoch,* 70 F.3d at 1496; *United States v. Malpiedi,* 62 F.3d 465 (2nd Cir. 1995); *Takacs v. Engle,* 768 F.2d 122, 125 (6th Cir. 1985). It is arguable that the facts of this case would qualify it as a case involving a successive representation issue if Bowles & Crow had continued to represent Defendant at trial. However, this was not the case, and Ms. Walker was not a former client of Defendant's trial counsel.

lawyer's performance in order to establish a Sixth Amendment violation arising from multiple representation).  The Government argues that "any harm from [Mr. Crow's] failure to inform [Defendant] of the firm's appointment to represent Ms. Walker, followed by Mr. Crow's lack of contact with her, and the subsequent failure of this information to be provided to the Court in order to hold a *Crucio* hearing, was completely superseded by the fact that at arraignment, and shortly thereafter, the Defendant and the witness each had new counsel."  The Court agrees.

Defendant alleges the conflict of interest by his former counsel, but does not show what effect this had on his representation by either his former counsel or trial counsel, nor does he show how Ms. Walker benefitted, at Defendant's expense, by having former counsel appointed to represent her.[15]  There is nothing in the record that demonstrates that Defendant's former counsel contacted Ms. Walker, or discussed the issues of Defendant's case with her.  There is no evidence that trial counsel's performance was affected by the alleged conflict of interest, or evidence that shows that trial counsel would have pursued any alternative strategy at Defendant's trial.  In fact, Defendant fails to identify any specific instance that occurred before or during his trial that compromised his trial counsel to the detriment of Defendant.   Defendant merely provides conclusory allegations that the ultimate result of the conflict of interest was a deprivation of his constitutional rights.  Due to the lack of evidence of any adverse affect, the Court cannot find that Defendant's former counsel's conflict was anything more than "a mere theoretical division of loyalties."  *Mickens*, 535 U.S. at 171.  Consequently, the Court finds that, because there was no adverse affect on trial counsel's representation of Defendant, and his rights were adequately

---

[15]Defendant additionally attributes his inability to "articulate how his right to a fair trial was in any way affected or prejudiced by prior counsel's representation" "solely [to the] result of nondisclosure" by the Government and his former counsel.

safeguarded by the appointment of Defendant's trial counsel to represent him, prejudice cannot be presumed.

### iii.    Presumption of Prejudice Under *Cronic*

The Court will now consider whether Defendant is entitled to a presumption of prejudice as set forth in *United States v. Cronic*.  In *Cronic*, the United States Supreme Court created a narrow exception to the *Strickland* requirements, when it determined that prejudice should be presumed in "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658.  The Supreme Court found that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial." *Id.* at 659; *see also Mickens*, 535 U.S. at 166.  "Similarly, if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." *Id.*  The Court further stated that  "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Id.*  In *Mickens*, the Supreme Court stated that it is "only in 'circumstances of that magnitude' [does the Court] forego individual inquiry into whether counsel's inadequate performance undermined the reliability of the verdict." *Mickens*, 535 U.S. at 166 (citing *Cronic* at 659, n. 26).

The Court finds that "[t]his case is not one in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel." *Cronic*, 466 U.S. at 666.  In this case, Defendant's former counsel did not represent him at trial, therefore Defendant could not have been denied counsel at a critical stage of his trial by his former

counsel.[16]  The Court also rejects Defendant's implication that due to the supposed conflict, Defendant's trial counsel failed to subject the Government's case to meaningful adversarial testing.  At the time of Defendant's trial, his current counsel had been representing him for approximately a sixteen months.  The Court considers this amount of time sufficient for current counsel to prepare for Defendant's trial, at which, the Court considered trial counsel's defense very thorough and well-developed.  Consequently, the surrounding circumstances do not show that a conflict of interest by Defendant's former counsel caused his trial counsel's effectiveness, or the adversary process itself, to be presumptively unreliable during Defendant's trial so as to evidence a denial of Defendant's Sixth Amendment rights.[17]  Defendant was not denied counsel at critical stages of his trial, and Defendant has not shown that any conflict caused Defendant's counsel to fail to subject the Government's case to meaningful adversarial testing.  As such, because the narrow exception in *Cronic* is inapplicable, Defendant's Sixth Amendment claim is insufficient without inquiry into Defendant's trial counsel's performance at trial.  *Cronic*, 466 U.S. at 662.  Accordingly, the Court finds that it is proper to consider the Defendant's claims under the standard expressed in *Strickland.*

### iv.    Ineffective Assistance of Counsel Under *Strickland*

---

[16]As stated by the Government, several of the "cases cited by the Defendant focus on whether an attorney had an actual conflict of interest at the critical stages of defendants entering guilty pleas or at their trials.  They are, therefore, inapposite to the facts of this case, in which conflict-free counsel was appointed at the time of the Defendant's initial arraignment and continued through trial."

[17]Even if Defendant "can attribute a deficiency in his representation to a source external to trial counsel," in this case, his former counsel's supposed conflict, this fact "does not make it any more or less likely that he received the type of trial envisioned by the Sixth Amendment, nor does it justify reversal of his conviction absent an actual effect on the trial process or the likelihood of such an effect."  *Cronic,* 466 U.S. at 662, n.1.

The Court finds that because the exceptions to *Strickland* allowing prejudice to be presumed are inapplicable, the Court must examine Defendant's claims of ineffective assistance of counsel under the normal standard in *Strickland*.  To prove ineffective assistance of counsel, a movant must demonstrate: (1) that his counsel's performance was deficient due to "errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment," and (2) that this "deficient performance prejudiced the defense" because "counsel's errors were so serious" they deprived movant of a fair trial.  *Strickland*, 466 U.S. at 687.  Both prongs of the test must be satisfied in order for the claim to succeed, and if a movant fails to make a sufficient showing under one prong, the court need not address the other.  *See Id.* at 697.

When evaluating whether an attorney's performance was so deficient that it failed to meet the Sixth Amendment's guarantee of "counsel," the Court applies "an objective standard of reasonableness."  *Id.* at 688.  Movant bears the burden of proving counsel's performance was unreasonable, considering the all of the circumstances.  *See id.*  There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689.

The Court finds that Defendant was not denied his right to counsel as contemplated by the Sixth Amendment.  As previously noted, Defendant's arguments are focused entirely on the alleged conflict of his prior counsel, which occurred prior to trial.  Defendant's former counsel did not represent him at all during trial, and Defendant does not allege that his current counsel, who has represented Defendant for at least the last 21 months, had a conflict of interest.  Defendant also makes no viable argument as to what his trial counsel would have done differently.  Any conflict that existed because of Defendant's former counsel was remedied by the appointment of Defendant's current counsel.

17

Any basis cited by Defendant in his attempt to show his counsel's performance was deficient, or that such deficiency prejudiced his defense, is founded upon conclusory allegations. In his Motion, Defendant discusses meetings the FBI had with Ms. Walker concerning the investigation of Defendant. Defendant states that if the FBI had any additional meetings with Ms. Walker besides the February 20, 2008 and March 3, 2008 meetings, his current defense counsel "has not been provided with discovery materials which evidence the substantial assistance provided by Ms. Walker and which attorney she was represented by when she provided that assistance." While Defendant admittedly does not allege any specific facts for how his trial counsel was ineffective, the allegation here is that discoverable materials were withheld from Defendant, and the knowledge of the dates and subject matter of any additional meetings would have allowed his current counsel to more adequately prepare for trial. Defendant attributes any ignorance of facts that might be material to his case to a lack of disclosure of the representation of Ms. Walker by his former counsel. However, Defendant does not state the basis for his belief that there were any additional meetings between the FBI and Ms. Walker, nor does Defendant explain how his trial counsel would have changed his strategy. Defendant has failed to show that the conflict of interest by his former counsel resulted in him being denied his right to a fair trial and effective assistance of counsel as guaranteed by the Sixth Amendment. The Court, accordingly, finds that Defendant is unable to prove either prong of the *Strickland* test and his ineffective assistance of counsel claim must fail. Consequently, because Defendant has failed to demonstrate that the new evidence is of such a nature that in a new trial it would probably produce an acquittal at trial, the Court denies Defendant's Motion for a New Trial.

## III.   CONCLUSION

Assuming that the conflict of interest at issue in this case did constitute newly-discovered

evidence, Defendant's failure to discover this evidence until after the jury reached a verdict in his case demonstrates a lack of due diligence that precludes the Court from granting a new trial. Regardless, even if the Court disregards Defendant's failure to satisfy this essential element, the fairness of Defendant's trial was not affected by the newly-discovered evidence.

By stating that the Court's failure to conduct an inquiry into whether a conflict of interest existed automatically justifies a new trial, Defendant misstates the intention and the holdings of the cases he cites. There is no *per se* rule that entitles a Defendant to a new trial simply because a trial court does not conduct an inquiry regarding a conflict of interest.[18] *United States v. DeCologero*, 530 F.3d 36, 76 (1st Cir. 2008) ("[R]eversal is *not* automatic when a trial judge fails to conduct a proper inquiry into a potential conflict of interest.") (emphasis in original); *see also Mickens*, 535 U.S. at 162 (The trial court's failure to inquire into a potential conflict of interest on the part of the defendant's attorney, about which the court knew or reasonably should have known, does not automatically require reversal of the conviction.). The Supreme Court explained this is because "defects in assistance [of counsel] that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens,* 535 U.S. at 166. The Court finds that any failure by the Court to conduct an inquiry pursuant to Rule 44 regarding a conflict of interest does not entitle Defendant to a new trial under the circumstances in this case.

"Even if the possibility of a conflict of interest was apparent enough to require the trial

---

[18]The automatic reversal rule in *Holloway* applies "*only* where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined that there is no conflict" *Mickens*, 535 U.S. at 168 (emphasis added). Defendant's trial counsel was free from a conflict of interest, and Defendant's former counsel was never forced to represent anyone "over his timely objection." *Holloway's* automatic reversal rule is therefore inapplicable, and the Court's failure to conduct an inquiry under Rule 44 did not result in a violation of the Sixth Amendment.

court to conduct a formal inquiry into the issue . . . 'the trial court's failure to make [that] inquiry does not reduce [Defendant's] burden of proof." *DeCologero*, 530 F.3d at 76 (quoting *Mickens*, 535 U.S. at 173-74). Defendant "still bears the burden of showing that the conflict of interest he alleges went beyond a "mere theoretical division of loyalties" and in fact "adversely affected his counsel's performance." *Id.* (citing *Mickens*, 535 U.S. at 171, 174). Defendant is unable to show that any actual conflict of interest adversely affected his counsel's performance.

As Defendant cannot show that any conflict of interest materially impaired his Sixth Amendment right to effective assistance of independent, conflict-free counsel or his right to a fair trial and to due process of law, Defendant's Motion for a New Trial is properly denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for New Trial Based on Newly Discovered Evidence of a Conflict of Interest [doc. #264] is **DENIED.**

Dated this <u>29th</u> Day of <u>August</u>, 2011.


_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE