IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,            )
                                     )
            Plaintiff,               )
                                     )        CRIMINAL NO. 09-3065 MCA
       vs.                           )
                                     )
KEVIN POWERS,                        )
                                     )
            Defendant.               )

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant's Second Motion for New Trial Based

Upon Newly Discovered Evidence - Brady Material [doc. #269], and the United States

Unopposed Motion to Exceed Page Limits for its Response and Exhibits Attached to its

Response to Defendant's Second Motion for New Trial [doc. #277].

In his Motion, filed on August 17, 2011, Kevin Powers ("Defendant") "moves the Court

for an order vacating the convictions and jury verdicts returned April 20, 2011, and for a new

trial for the reason that the United States suppressed exculpatory and impeachment evidence in

violation of *Brady v. Maryland*, 373 U.S. 83 (1963)."  The Court has considered Defendant's

arguments in favor of granting a new trial, finds them without merit, and denies the same.

## I.      BACKGROUND

Defendant was a real estate agent and a mortgage broker in Albuquerque, New Mexico,

involved in purchasing and selling residential real estate properties, as well as obtaining

financing for the purchasers of residential properties.  Defendant became the subject of a federal

investigation concerning possible mortgage fraud in early 2008.  The initial indictment against

Defendant was filed on October 21, 2009.  Defendant was arrested on November 4, 2009.  On

November 5, 2009, John Van Butcher of the Federal Public Defender's office was appointed to

represent Defendant.  On November 6, 2009, Mr. Butcher filed a motion to withdraw as

Defendant's counsel, due to a conflict of interest arising out of his representation of Chris Sena, a witness that was cooperating with the FBI in Defendant's case.  Mr. Butcher's motion to withdraw was granted by the Court on November 10, 2009, which is the same day that Defendant's current counsel was appointed to represent him.  Defendant was arraigned at the United States District Court in Albuquerque on November 18, 2009.  On December 14, 2009, a superseding indictment was filed, and Defendant was permitted to waive arraignment on December 22, 2009.

On July 27, 2010, the grand jury returned a 17-count Second Superseding Indictment charging Defendant with wire fraud, in violation of 18 U.S.C. § 1343.  Defendant's trial occurred in April 2011, with the jury finding Defendant guilty of 17 counts of wire fraud on April 20, 2011.

## II.    DISCUSSION

Defendant asserts in his Motion that he is entitled to a new trial because the suppression of exculpatory and impeachment evidence by the United States materially impaired Defendant's Sixth Amendment right to a fair trial and right to due process of law.  A constitutional claim alleging a failure to disclose exculpatory evidence, commonly known as a *Brady* claim, is based on the principle that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.

Rule 33 provides: "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  A motion for a new trial asserted on the ground of newly discovered evidence "must be filed within three years after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(1).  As Defendant was found guilty on April 20, 2011, and his

Motion was filed on August 17, 2011, Defendant's Motion is timely.  *See also United States v. Young,* 20 F.3d 758, 762 (7th Cir.1994) ("A timely motion for a new trial under Rule 33 allows the district court to consider and the appellate court to review an accompanying *Brady* claim without invoking habeas corpus jurisdiction.").  However, "[a] motion for a new trial based on newly discovered evidence is generally disfavored and 'should only be granted with great caution.'"  *United States v. Gwathney*, 465 F.3d 1133, 1143-44 (10th Cir. 2006), *cert. denied*, 550 U.S. 927 (2007), *citing United States v. Combs*, 267 F.3d 1167, 1176 (10th Cir. 2001).

Under *Brady*, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87; *see also United States v. Hughes*, 33 F.3d 1248, 1251 (10th Cir. 1994).  "With the holding of *Giglio v. United States,* the Supreme Court further delineated the disclosure requirements explaining that [w]hen the reliability of a given witness may well be determinative of guilt or innocence,  nondisclosure of evidence affecting credibility falls within this general rule." *Id.* at 1336-37 (quoting *Giglio*, 405 U.S. 150, 154 (1972) (internal citations omitted).   However "*Brady* did not create" a "general constitutional right to discovery in a criminal case." *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977).  If a new trial motion is based on an alleged *Brady* violation, a defendant must demonstrate that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material. *Combs* 267 F.3d at 1172; *see also United States v. Quintanilla,* 193 F.3d 1139, 1149 (10th Cir.1999); *Brady*, 373 U.S. at 87.

    **A.**    ***Suppression of Evidence***

      Defendant argues that he was denied his right to a fair trial and due process of law because the Government suppressed exculpatory and impeaching evidence.  On July 12, 2011, the draft

presentence report was provided to Defendant and his counsel.  Defendant argues that this report

discloses for the first time that Ronald Campbell, an Albuquerque realtor, was a confidential

source/informant.  Defendant's argument alleges that the disclosure of Mr. Campbell's identity

prior to trial would have allowed Defendant to investigate Mr. Campbell and his association with

Chris Sena, a witness that testified against Defendant at trial.  Defendant argues that this

investigation would have resulted in the discovery of exculpatory and impeachment information,

which Defendant would have used in his cross-examination of Chris Sena.  "In a criminal case,

the prosecution has a duty to disclose exculpatory evidence . . . ." *United States v. Geames*, 427

F.3d 1333, 1336 (10th Cir. 2005) (citing *Smith v. Sec'y of New Mexico Dep't of Corr.*, 50 F.3d

801, 825-26 (10th Cir.1995).  However, the Government argues that Defendant has known of Ron

Campbell's involvement in the investigation since November 2009.

     The Government states that it produced discovery to Defendant on November 18, 2009,

wherein Mr. Campbell's identity was disclosed to Defendant as a source of information to the

FBI.  The Government states that this discovery contained an investigative report from Suntrust

Mortgage regarding the purchase of a property located at 11801 Eagle Rock by Dawn Tuschhoff.

This property was the subject of the last charged transaction, which was contained in Counts 16

and 17.[1]  The Government notes that "[t]he first three pages of the report summarize the fraud

investigation opened by Suntrust."  Mr. Campbell is featured very prominently in one of the

paragraphs summarizing the fraud.[2]  The report states, in pertinent part:

     04/23/2007 - (Phyllis Spence in Appraisals reviewed file and has opened an appraisal

---

[1]As the Government notes, "[t]he investigative report is Bates numbered 6-11801-359
through 522, and titled 'Investigative Loan Detail.'"  *See* Exhibit 2 to the Government's Response
to Defendant's Motion [doc. #275-2].

[2]*See Id*. at 3 (Bates number 6-11801-361).

investigation 4/23/07) Referred by Dave Hevner, Security Services, for an invstgn b/c he recvd a call from **Ron Campbell** (*emphasis added*) of Campbell and Campbell Real Estate Services (505-821-7666) in Albuquerque, NM, claiming that he listed this property a few months ago for 599k for a company by the name of KIVA Assets and that they cancelled the listing and then gave it to Susam (sic) Robart, a former employee of Campbell and Campbell. The house just sold for $799k and that he had heard rumors of Ms. Robart bragging about a 200k bonus she and numerous other parties recvd from the sale. Campbell pulled the hud 1 and on the addmn there was a 200k allowance for home repair. Campbell advised that there was nothing wrong with the house. **Mr. Campbell also stated that he had contctacted (sic) the FBI and Dave asked that when he hears from them to give them his number etc. JMS** (*emphasis added*)

Furthermore, the Government argues that it did not withhold any information about the existence of a source, but disclosed this information in the "1" Series of 302's in January 2011. The "1" Series discussed by both the Government and Defendant concern information obtained by the FBI from a source. On or about January 14, 2011, the Government produced the 302's to Defendant. In regards to this discovery, the Government states:

> The first 302 in the "1" series, Bates numbered 1-01 and 1-02, is dated 4/16/2007, and deals exclusively with the property located at 11801 Eagle Rock. (Exhibit 4). In the 302, the Source identifies the seller as Mark Thompson and KIVA Assets; says Thompson bought the property for $400,000 and spent one year renovating the property; identifies the seller's agent as Susan Robart with Allstar Realty, who is described as being on medication, possibly bi-polar and on probation for promoting prostitution3; describes how Campbell and Campbell was unsuccessful in selling the property for $600,000.00; how Campbell and Campbell lost the listing to Robart, who raised the selling price to $775,000.00; how the property eventually sold for $760,000.00; names Charles Frank (a person unknown to the government) as saying that Robart was bragging about selling the property for $200,000.00 more than Campbell and Campbell had listed it for; names Fidelity Title Company and escrow agent Mona Ford as closing the transaction; names Kevin Powers as the selling agent, who worked for Vaughn; provides Kevin Powers' work address and phone number; names Suntrust as the mortgage company and Dave Hefner (sic) as the security specialist with Suntrust and gives Hefner's (sic) phone number(which was redacted by the government); points out the line item on the HUD-1 for 11801 showing a repair allowance in the amount of $200,000.00; and provides MLS print-outs for the listings of 11801 Eagle Rock by both Campbell and Campbell and Susan Robart with Allstar Realty.
>
> The information from the Source in this initial 302 of the "1" series contains

information identical to that in the Suntrust Mortgage Loan Investigation report, which the investigator said Suntrust received from Ron Campbell on or about April 23, 2007, after Campbell already had reported the information to the FBI. A comparison of the two reports shows that the source in the 302s is reporting the same information which Campbell gave to Suntrust Mortgage Company about one week later. Although the identity of the source is redacted, it is highly likely that the Defendant deduced that the source was Campbell based on the previous information he had received.

Even assuming that the Defendant did not realize that Campbell must be the source in the "1" series 302s, the Defendant knew after their disclosure in January, 2011 that there had been a source and that the source had had contact with Sena. He had this information in advance of trial, which did not commence until April 6, 2011. At the least he could have inquired to confirm whether the source in the "1" series 302s and the Suntrust file was one and the same. Instead, the Defendant never inquired about the identity of the source, or any of the other issues he now raises about the reports. . . .

The Government argues that there is no *Brady* violation because the investigative reports disclosing the identity of Mr. Campbell as a source of information to the FBI were produced to Defendant prior to trial. The Court agrees. Defendant was informed about the existence of a source prior to trial, and Mr. Campbell's identity as an FBI source was disclosed in the "1" series of 302s. A review of the exhibits presented by the Government corroborates its arguments, and any failure by Defendant to investigate Mr. Campbell cannot be attributed to the Government. The Court, therefore, finds that any argument by Defendant claiming a deprivation of his right to fully cross examine Chris Sena, or that the Government suppressed information regarding Ron Campbell as a source, is without merit.

Defendant additionally argues that the Government suppressed the contents of four voicemail messages and "several" email messages. Defendant claims that these messages mentioned in the "2" series 302s were not disclosed and could have led to exculpatory or impeachment material. However, the Government argues that "on or about November 18, 2009, in addition to disclosing the "2" series 302s, the United States produced compact discs with

recordings of the telephone calls and voice mails . . . ."  The Government states that "[t]hese are the only recordings in the possession of the United States of conversations or voice mails involving the Defendant, and they were all disclosed."

In regards to Defendant's allegation that the Government suppressed emails, the Government states that "[t]he emails referred to in the "2" series 302s, in a report Bates numbered 2-23, were ones Sena said he and the Defendant exchanged."[3]   The Government further states that Sena did not provide these emails to the Government.  The Court, consequently, finds Defendants allegations on this issue are without merit.  The record before the Court does not reveal that the Government suppressed any information regarding the emails discussed in the "2" series 302s.  The existence of the emails, which involved Defendant, was disclosed, and the failure to produce these emails can be attributed to the Government's lack of possession of the emails.  Even if the emails were in the possession of the Government, the Court finds that Defendant's claim must still fail.  The reference to the emails states that the source had email contact with Defendant.  "If the means of obtaining the exculpatory evidence has been provided to the defense, however, a *Brady* claim fails, even if the prosecution does not physically deliver the evidence requested."  *Hughes*, 33 F.3d at 1251 (citing *United States v. Dupuy,* 760 F.2d 1492, 1501 n. 5 (9th Cir.1985).  Consequently, Defendant's claim that the Government suppressed the contents of four voicemail messages and "several" email messages must therefore fail.

**B.**     ***Favorable Evidence***

---

[3]The 302 states: "Source has had email contact with POWERS regarding property deals and property offers."  *See* page 23 of Exhibit 5 to Plaintiff's Response to Defendant's Second Motion for New Trial Based Upon Newly Discovered Evidence - Brady Material (doc. #275-5).

The second element of *Brady* "requires proof the evidence in question was exculpatory, or favorable, to the defendant." *Combs*, 267 F.3d at 1185 (quoting *Smith*, 50 F.3d at 825). "[E]vidence is exculpatory under *Brady* if it is either generally favorable to the accused's defense or impeachment evidence." *Geames*, 427 F.3d at 1336 (10th Cir. 2005) (citing *Smith*, 50 F.3d at 825-26. "[B]ecause impeachment is integral to a defendant's constitutional right to cross-examination, there exists no pat distinction between impeachment and exculpatory evidence under *Brady*." *Ballinger,* 3 F.3d at 1376 (quoting *United States v. Buchanan,* 891 F.2d 1436, 1443 (10th Cir.1989), *cert. denied,* 494 U.S. 1088 (1990)).  The Government argues that there was no exculpatory or impeaching information in the investigative reports produced to Defendant.  The Court finds that due to Mr. Campbell's identity as a source of information to the FBI being disclosed to Defendant prior to trial through discovery, in addition to the voicemails and email messages that Defendant alleges were suppressed, the Court cannot find that a *Brady* violation has occurred, and need not consider whether the evidence was exculpatory or impeaching.

### C.    *Material Evidence*

The third element of a *Brady* claim "requires proof that the evidence was 'material either to guilt or to punishment.'" *Combs*, 267 F.3d at 1175 (quoting *Smith*, 50 F.3d at 826); *see also Brady*, 373 U.S. at 87.  "A fair analysis of the holding in *Brady* indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial. " *Id.* (quoting *Smith*, 50 F.3d at 826) (internal citations omitted).  Evidence is therefore material "'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'" *Hughes*, 33

F.3d at 1251 (quoting *United States v. Bagley,* 473 U.S. 667, 682 (1985)).  "Where the evidence is material such that the omission deprived the defendant of a fair trial, the verdict must be set aside due to the constitutional violation." *Wolf,* 839 F.2d at 1391 (citing *United States v. Agurs,* 427 U.S. 97, 108 (1976)).  "To make the materiality determination, [the court] view[s] the suppressed evidence's significance in relation to the record as a whole." *Hughes*, 33 F.3d at 1251 (quoting *United States v. Wolf,* 839 F.2d 1387, 1391 (10th Cir. 1988), *cert. denied,* 488 U.S. 923 (1988).

Defendant argues that the disclosure of Mr. Campbell as an FBI source constituted newly-discovered evidence.  Defendant claims this evidence was material and relevant to the consideration of his guilt or innocence in this case, and further argues that some of this evidence, which he now seeks, is also material and relevant to mitigate punishment at his sentencing hearing.  However, regardless of the Court's finding that the Government did not suppress any evidence, the Court finds that there is not a "reasonable probability" that the evidence would "undermine confidence in the outcome" of Defendant's case.  *See Hughes,* 33 F.3d at 1251; *Bagley,* 473 U.S. at 682.  Even if the Court assumes that the evidence could be considered newly-discovered, the Court does not believe that the jury verdict could reasonably have been affected by the evidence that Defendant sets forth as the basis for his Motion.  The strength of the evidence against Defendant at trial was sufficient to justify the jury's determination that Defendant was guilty of the crimes charged against him.  Furthermore, Chris Sena was just one of six witnesses that testified about buying a home under Defendant's fraudulent scheme.  By the time he testified, the additional five buyers had also testified about how Defendant had submitted false income and occupancy information about them.  Defendant has not demonstrated that this new evidence would have a reasonable probability of changing the outcome of his trial.  *See*

9

*Bagley*, 473 U.S. at 682.  In making this determination on the materiality of the evidence, the Court has considered "the suppressed evidence's significance in relation to the record as a whole."  *Hughes*, 33 F.3d at 1251; *Wolf,* 839 F.2d at 1391.  The Court is therefore "confident that the jury's verdict would have been the same."  *Kyles v. Whitley*, 514 U.S. 419, 453 (1995).

## III.    CONCLUSION

In summary, the Court finds that there is no evidence that the Government suppressed any information or failed in its duty to disclose any known information to Defendant that is favorable or material to his defense.  The evidence shows that Defendant was notified as early as November 2009 that Ron Campbell had revealed information to the FBI, and the Government disclosed the voicemails and the existence of the emails to the Defendant prior to trial.  The Court also finds that, because no information was suppressed, there is not a reasonable probability that the result of Defendant's trial would have been different.  Because Defendant cannot establish these essential elements required by *Brady*, his Motion fails and must be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Second Motion for New Trial Based Upon Newly Discovered Evidence - Brady Material [doc. #269] is **DENIED.**

**IT IS HEREBY FURTHER ORDERED** that the United States Unopposed Motion to Exceed Page Limits for its Response and Exhibits Attached to its Response to Defendant's Second Motion for New Trial [doc. #277] is **GRANTED.**

Dated this <u>31st</u> Day of <u>August</u>, 2011.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE

10