IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL NO. 09-3065 MCA |
| vs. ) | |
| ) | |
| KEVIN POWERS, ) | |
| ) | |
| Defendant. ) | |

UNITED STATES' RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM
AND MOTIONS FOR DOWNWARD DEPARTURE
AND DOWNWARD VARIANCE (Doc. 281)

The Defendant seeks a downward departure from the advisory guideline calculations set out in the Pre-Sentence Report, primarily based on the calculations of intended or actual losses, which he claims substantially overstate the seriousness of his offense. Additionally, he seeks a variance from the advisory guideline calculations in order for the Court to impose a sentence which is sufficient, but not greater than necessary to achieve the sentencing purposes of 18 U.S.C. § 3553(a). Specifically, he seeks a sentence of 6-12 months, using a combination of local jail time, halfway house and home confinement, followed by 5 years probation.

The United States objects to either a downward departure or a variance.

The Pre-Sentence Report sets out the following advisory offense level computations and criminal history calculations: ¶ 105: Base offense level 7; ¶ 106: addition of 18 levels for an "intended" loss of $5,548,874.75 or an "actual" loss of $3,002,745.85; ¶ 107: addition of 2 levels for use of sophisticated means; ¶ 108: addition of 2 levels for defendant's receipt of more than $1 million in gross receipts; ¶ 111: addition of 2 levels for obstruction; ¶ 114: adjusted offense level

is 31, with a Criminal History Category of I, yields an advisory guideline imprisonment range of 108 to 135 months. ¶ 193.

The United States, in its Response to the Defendant's Supplemental Objections to the Pre-Sentence Report Regarding Loss Calculation (Docs. 285, 286), agrees with an intended loss amount of $5,548,874.75, but calculates an actual loss of $1,857,973.01.  If this actual loss amount is used, only 16 levels are added to the base offense level of 7 under U.S.S.G. § 2B1.1(b)(1)(I).  The adjusted offense level would then be 29, yielding an advisory guideline imprisonment range of 87 to 108 months.

The Defendant claims that no loss amount can be determined reliably, and so requests that the Court use the gain to the Defendant as an alternative measure of loss.  The United States, while objecting to this method of computing loss, measures the gain to the Defendant as the total amount paid to K&E Construction Company, the Defendant's company, over the course of the nine transactions, in addition to any commissions received by the Defendant on the transactions.  The Pre-Sentence Report, at ¶ 91, shows a total of $1,267,500.00 in amounts paid to K&E.  This amount, plus any commissions received, is over $1 million, so pursuant to § 2B1.1(b)(1)(I), 16 levels are added to the base offense level of 7, for an adjusted offense level of 29.

Downward Departure and Variance

The Defendant argues extensively that the advisory guidelines based on the amount of loss in this case, assuming a total loss of $5.5 million, and the enhancements for the specific offense characteristics, are not based on empirical data or national experience, and that the Court, therefore, should disregard them and depart downward by as many as 21 levels.  His argument that there is near unanimity among judges sentencing top-level corporate fraud defendants that

guideline sentences based on loss are too high rests almost entirely on district court decisions in securities fraud or significant corporate fraud cases, which can have extremely high loss amounts and their own special issues relating to computation of losses.  Defendant's Sentencing Memorandum at 15-19.  The Defendant's argument in respect to an alleged overall dissatisfaction with the Sentencing Commission's treatment of corporate insider fraudsters should not be taken to apply across the board to all white collar defendants.

The Defendant also complains of what he terms "factor creep" in the growing number of specific offense characteristics listed in § 2B1.1, as an additional reason for a downward departure.  However, in this case, only two have been applied to him: a 2-level enhancement for gross receipts, PSR ¶ 108, and a 2-level enhancement for use of sophisticated means, PSR ¶ 2. The Tenth Circuit, in an unpublished opinion, has rejected " ... the contention that the application of the sophisticated means enhancement in tandem with the amount of loss and gross receipts enhancement constituted double counting." *United States v. Small*, 210 Fed. Appx. 776, 2006 WL 3720253 (C.A. 10 (Colo.)), at 7.  The Tenth Circuit noted that the conduct which qualified the defendant for the sophisticated means enhancement was his method of hiding them, whereas the other two enhancements were concerned solely with amounts of money.  *Id*.  The Tenth Circuit also concluded that the amount of loss and gross receipts enhancements were not cumulative, even though both were concerned with amounts of money, because one focused on the overall size of the fraud while the other targeted the effect on financial institutions in particular.  *Id*.  In this case, the Pre-Sentence Report appropriately has enhanced the Defendant's offense range for both these factors.

The Supreme Court has held that the district court is entitled to reject and vary

categorically from the crack-cocaine guidelines based on a policy disagreement with those guidelines. *Spears v. United States*, 555 U.S. 261, 265-66 (2009). The Tenth Circuit has not questioned that policy disagreements can extend beyond those concerning crack-cocaine guidelines. *United States v. Friedman*, 554 F.3d 1301, 1311 (10th Cir. 2009). To the extent that the loss guidelines in § 2B1.1 are not based on empirical data and national experience, the district court is afforded greater leeway to engage in policy disagreements with Guidelines which are not the product of the Commission acting in its traditional institutional role. *Id*. at 1311 n. 13. "However, at the very least, district court decisions to vary based on policy disagreements must pass muster under general principles of reasonableness review. Under those principles, we are obliged to examine the nexus between the district court's policy disagreement with the guidelines and the magnitude of the variance, to determine if the reasons for the policy disagreement can bear the weight of the variance." *United States v. Lente*, 323 Fed. Appx. 698, 713-14, 2009 WL 1143167 (C.A. 10 (N.M.)), dissent by Judge McWilliams. Therefore, should this Court elect to follow the Defendant's request for a variance based on a policy disagreement with the guidelines concerning calculating the guidelines on loss amounts, the Tenth Circuit requires the Court to establish the requisite nexus between any policy disagreement and the sentence.

In fashioning a sentence, the Court must take into account the factors enumerated in 18 U.S.C. § 3553(a), which include the nature of the offense and characteristics of the defendant, the need for the sentence to reflect the seriousness of the crime, to provide adequate deterrence, to protect the public, and to provide the defendant with needed training or treatment. *United States v. Kristl*, 437 F.3d 1050, 1053 (10th Cir. 2006). Guiding the Court's determination is the requirement that the Court craft a sentence that is "'sufficient, but not greater than necessary, to

comply with the purposes' of criminal punishment, as expressed in § 3553(a)(2)." *United States v. Martinez-Barragan*, 545 F.3d 894, 904-05 (10th Cir. 2008).  The Court, in determining whether a variance under the § 3553 factors is appropriate, has wide discretion in varying, although a non-guideline sentence can fall outside a range of reasonable sentences if the Court's justification is not sufficiently compelling to support the degree of variance.  *United States v. Pinson*, 542 F.3d 822, 837 (10th Cir.), *cert. denied*, 129 S.Ct 657 (2008).

      The Defendant argues that several factors mitigate in his favor for a variance.  He claims first that his primary motivation was not greed because he did not set out to defraud the lenders, but rather believed the buyers would repay all of the money he assisted them to borrow. Defendant's Sentencing Memorandum at 33.  This argument is at variance with reality, in that the Defendant had no control over how the buyers elected to spend the cash back funds after receipt, and likewise had no control over market factors.  More importantly, he knew their true financial situations, and yet recommended purchases of houses which they could not afford on the risky basis of a never-ending rising market.  Whether he was motivated by greed is not the issue so much as his complete irresponsibility toward the lenders and the buyers in pushing these purchases, which were based on lies about the ability of the buyers ever to repay the loans.

      He next cites a low risk of recidivism in his case, based on his age and first offender status.  While this may have some merit statistically, the Defendant's refusal to take any responsibility for his actions in this case suggest otherwise.

      It is difficult to understand how the Defendant can claim that his actions constitute aberrant conduct, when there were nine transactions charged over the course of one year.  His attempt to cast these multiple transactions as aberrant in the context of the rest of his life ought

not to be regarded.

The Defendant claims he will be unable to commit other frauds in future having voluntarily surrendered his real estate and mortgage brokerage licenses. Rather, he will be unable to commit these particular kinds of frauds. However, based on the ingenuity displayed in engineering these frauds, it is within the realm of possibility that the Defendant may find other fields of endeavor equally tempting, and once again lose his moral compass and engage in "reckless conduct."

The Defendant states he will be better able to make restitution if he receives the low sentence he requests. Inasmuch as he has not had particularly gainful employment since he left the real estate world, his ability to make any significant restitution appears unlikely.

Finally, the Defendant says he already has been punished enough because of collateral effects of his crimes, including the loss of his profession and his family. It is not clear that tensions leading to his divorce are completely traceable to his crimes. Nor is it clear that his difficulties in seeing his daughter are likewise a consequence of the crimes. And it is also unclear that he is forever barred from working as a realtor or mortgage broker. The fact that he voluntarily relinquished his licenses does not answer the question about whether he can reapply at some point in the future. Even medical doctors and lawyers whose licenses are suspended for felony convictions are not forever barred in New Mexico from practicing their professions.

What the Defendant does not discuss, and what the Court also needs to consider in fashioning a reasonable sentence, is the need for the sentence to reflect the seriousness of the crime and to protect the public. The fact that the Defendant takes no responsibility for the crimes he committed, instead pointing to the banks, the lenders, and the buyers, suggests that the Court

must consider the need to protect the public.  The Defendant had a serious impact on the lenders whom he lied to in that he was part of a group throughout the United States who took advantage of various factors to promote his own criminal purposes.  Although he is a minor player compared with, for example, the banks which securitized these loans, he is nevertheless a contributor to the economic mess in which the United States now finds itself.  The reasons the Defendant gives for a variance are outweighed by the seriousness of what he did and the need to protect the public.  The United States submits that the proposed guideline sentence is appropriate, and not greater than necessary, to meet the factors the Court must consider in fashioning a sentence.

The United States respectfully requests the opportunity to argue additional points at the sentencing hearing, as it only received the Defendant's Sentencing Memorandum on Friday, September 9, 2011, and is filing this Response on Monday, September 12, 2011.

Wherefore, for all the foregoing reasons, the United States objects to a downward departure or a variance in this case, and respectfully requests the Court to sentence the Defendant within the guideline imprisonment range as set out above.

Respectfully submitted:
KENNETH J. GONZALES
UNITED STATES ATTORNEY
*Filed Electronically September 12, 2011*
Mary L. Higgins
George C. Kraehe
Assistant U.S. Attorneys
201 Third St., NW
Albuquerque, New Mexico  87012
(505) 346-7274

I certify that on September 12, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the defendant, Daniel J. Tallon, Esq., 6 Placitas West Road, Placitas, New Mexico, 87043.

*Filed Electronically September 12, 2011*
Mary L. Higgins, Assistant U.S. Attorney